Syllabus.

# Richmond

## Old Dominion Iron and Nail Co. v. Chesapeake and Ohio Railway Co. and Others

March 12, 1914.

Absent, Cardwell, J.

1. NAVIGABLE WATERS—*James River.*—The legislative declarations with respect to James river and the decisions on the subject make it manifest that James river, above tidewater, is now and has been a navigable stream for too long a period for the fact to now be questioned.

2. NAVIGABLE WATERS — *Riparian Owners—Estoppel—Laches.*—The State of Virginia has for over a century, by numerous acts, asserted her right to control and dispose of the waters of James river above tide, and, in view of the vast property rights that have been acquired under and by virtue of the State's long recognized right to control said river above tide and dispose of its waters, it is now too late for the appellant, as riparian owner, to claim rights in said river superior to those so long exercised by the State, whether said claim be asserted under the laws of England under which appellant claims, or otherwise.

3. NAVIGABLE WATERS—*Riparian Owners—Ches. & O. R. Co.—Rights.*—More than a century ago the State granted to a canal company the power to take an unlimited amount of water from James river for the purpose of navigation and for power purposes. Under various grants from the state broad powers, rights and privileges were conferred, and large enterprises have grown up, and many important and costly water privileges and rights have been acquired from said canal company and its successors. All of the rights, property and franchises acquired by the Canal Company have by successive acts and conveyances become vested in the Chesapeake and Ohio Railway Company, which company is clearly the grantee of the State of Virginia of the water of James river, for certain purposes. Under various grants from the State broad powers, dinary riparian owner's rights upon a navigable stream.

4. Equity Pleading—*Exhibit with Demurrer—Appeal and Error.*— It is an unusual practice to file an exhibit with a demurrer to a bill, and it is not approved. Where the complainant has filed with his bill as an exhibit a selected portion of another record, and it is necessary, in order to show the real facts established by such selected portion and the real value thereof, to file an additional paper from such record, the proper practice is to move the court to require the complainant to file with the bill such additional part as may be necessary from the other record. Practically the same result was accomplished in the trial court by treating the exhibit filed with the demurrer as though it had been filed with the bill, and while this method of procedure is not approved, it would be a vain and useless thing to remand the cause to have the exhibit brought into the cause in a regular way, and as there was no objection made to the mode of procedure in the trial court, it will be considered in this court as a part of the record.

5. Navigable Waters — *Riparian Owners—Laches.*—After the long silence and acquiesence of the appellant in the openly asserted rights of others, a court of equity will not lend its aid to the destruction of vast property rights and privileges that have become vested on the faith of the State's ownership and control of the waters of James river, and its right to dispose of the same in its discretion.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for the defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* for the appellant.

*Henry Taylor* and *H. R. Pollard,* for the appellees.

Harrison, J., delivered the opinion of the court.

This case is before us on appeal from a decree of the

168 OLD DOM. IRON & N. CO. *v.* C. & O. R. CO., 116 VA. 166.

Opinion.

Law and Equity Court of the city of Richmond, sustaining the demurrer of the appellees to the bill of complaint filed against them by the appellant.

The bill alleges that the complainant is the owner of an island, known as ''Belle Isle,'' lying in James river, and within the corporate limits of the city of Richmond, containing about forty-six acres; that this island was originally granted by the Crown to William Byrd, the younger, and that by virtue of various mesne convey-- ances the title and all rights and appurtenances belonging thereto is now vested in the complainant; that upon this island complainant has erected a large plant for the manufacture of iron, nails and other iron and steel products, representing a large investment, and that in addition there are several costly plants on the island erected by tenants holding leases of land and power from complainant, and that the island affords natural advantages for the establishment of other plants, if sufficient water power can be obtained. The bill further alleges that the ebb and flow of the tide in James river stops at a point about one mile below this island, and that the river is not now, nor has it ever been a navigable stream within the meaning of the law affecting riparian rights above the point where the flow of the tide stops.

Complainant further alleges that by virtue of its ownership of the fee simple in this island it is also the owner of the fee in the land on either side of the island to the thread of the stream flowing between the island and the mainland, and that by the ownership of such land and the riparian rights attached and appurtenant thereto it has the right to have the water of James river flow down the natural bed of the stream, and to the use of the water in the stream as it passes along without diminution or diversion, for all beneficial purposes, including any power which may be developed therefrom.

Complainant further alleges that a great quantity of water which would naturally flow by its island is being withdrawn and diverted from the river at a point above its lands and not returned until it reaches a point below its property, thereby leaving complainant an insufficient supply of water to operate its works and those of its lessees.

The bill and the exhibits filed therewith, and the legislation of the State with respect to the matter in controversy, which must be looked to on the demurrer, all show that the acts of the Chesapeake and Ohio Railway Company and the city of Richmond, in diverting the water of James river in the manner complained of, are in pursuance of power and authority to do so vested in the Chesapeake and Ohio Railway Company and its predecessors in title by the Commonwealth.

The prayer of the bill is that the rights of the complainant and the defendants in the use of the water of the James river be determined, and that a decree be entered establishing those rights, and that all proper injunctions be awarded, etc.

We are of opinion that the contention of the appellants that James river above tidewater is not a navigable stream is wholly untenable. From an early day the great importance of the James river to the people of the Commonwealth as a navigable stream above tidewater, has been repeatedly recognized and emphasized in the legislation of the State. Indeed, long prior to the revolution the river above tidewater was used by the inhabitants for the transportation of their products to market, and numerous acts were passed for the purpose of improving and facilitating its use as a public highway. 5th Hening's Statutes, p. 375, passed in 1745; 8 Id. p. 148, passed in 1765; 8 Id., p. 564, passed in 1772.

We deem it unnecessary to pursue this subject further,

for in view of the legislative declaration with respect to this river and the decisions on the subject, it is manifest that James river, above tidewater, is now and has been a navigable stream since too remote a period for the fact to be questioned.

Appellant further contends that in all rivers where the tide does not ebb and flow, and which are navigable in fact, the title to the bed of the river belongs to the riparian owner, subject however in navigable rivers to the rights of the public to navigation.

In our view of this case it is not necessary to discuss or determine the rights of the State in all of her navigable rivers where the tide does not ebb and flow, and we will, therefore, confine our consideration exclusively to the rights of the State in James river above tide and between the tremini of the James River and Kanawha canal.

The facts of this case, as will hereinafter appear, show that throughout her history the State of Virginia has by numerous acts asserted her right to control and dispose of the waters of the James river above tide, and her absolute right to do so has never been questioned except by the appellant. In view of the vast property rights that have been acquired under and by virtue of the State's long recognized right to control James river above tide, and dispose of its waters, we are of opinion that it is now too late for the appellant, as a riparian owner, to claim rights in the river superior to those so long exercised by the State.

It is further contended by the appellant that inasmuch as it holds its title under a grant from the Crown its riparian rights must be determined by the laws of England in force at the time such grant was made. It is not necessary to inquire what the riparian rights of appellant were under the laws of England at the time the

grant in question was made, for, if the laws of England at that time gave the appellant riparian rights superior to those it now enjoys under the law of Virginia, it would not avail appellant in this case. It has been now nearly two hundred years since that grant was made. For more than one hundred and thirty years the James river has been controlled by the State of Virginia under and in accordance with her laws. By numerous statutes and recorded contracts with great works of internal improvement she has, during all of that time, repeatedly asserted her right to the navigable waters of the James and the soil under such waters, and has continuously through all of those years exercised her superior right to control and dispose of the same at her discretion. No authority need be cited in support of the conclusion that under such circumstances it is now too late for the appellant to claim that its riparian rights in James river are to be determined by the laws of England as established nearly two hundred years ago, rather than by those of Virginia as they now exist.

The bill shows that as early as 1784 (11 Hening's Stat. p. 450) a company known as the James River Company was created by the Virginia legislature to construct a canal along the banks of James river for the purpose of improving its navigation. In 1832 (Acts 1831-32, p. 73) the James River and Kanawha Company was incorporated, succeeding to all of the rights of the first-named company and finally carrying through at an enormous expenditure of money this great canal enterprise to which the State attached so much importance as a means of furnishing the public with adequate transportation. Under these grants by the State broad powers, rights and privileges were vested in these two companies. They were given the right to build dams in the rivers and to divert its waters from the bed of the stream, not only for

the navigation contemplated by the canal, but for many other purposes. The legislature, foreseeing that along the line of the canal and works to be constructed mills, forges and other enterprises could be advantageously erected where they could use the water power from the canals, vested in these companies the power and authority to build large canals capable of carrying all the water that might be necessary to meet such demands, and to dispose of the same to the proprietor of the adjoining lands upon such terms as they might agree upon. The only limitation put upon the right of these companies to divert the waters of James river and sell or lease the same to other parties was that it should not be done to an extent sufficient to impair the navigation contemplated by the canal.

In 1879 (Acts 1878-79, p. 118), the canal having been practically destroyed by a great freshet, the James River and Kanawha Company was authorized to transfer, upon certain terms and conditions, all of its rights, property and franchises to the Richmond and Alleghany Railroad Company. This transfer was made upon the terms and conditions prescribed. One of these conditions was, "that the rate of dockage at Richmond shall not exceed the rate at present established by the James River and Kanawha Company, and all existing contracts for water privileges along the entire line shall be respected and maintained at rates not exceeding the present rates, except in those cases in which they may be cancelled or altered by agreement, or extinguished by condemnation. It shall be the duty of the Richmond and Alleghany Railroad Company to maintain the present water supply of the docks and of the canal along its line, between Bosher's dam and tidewater, and along the Lynchburg level between the water works dam (which shall be preserved) above Lynchburg and the first lock

below Lynchburg, and in the construction of its railroad it shall not so destroy or obstruct the present canal between Bosher's dam and tidewater, or between the water works dam above Lynchburg and the first lock below Lynchburg as to lessen the present water supply." Clause 1, sec. 6, Acts 1878-79, p. 118.

All of these rights, property and franchises acquired from the canal company by the Richmond and Alleghany Railroad Company have, by successive acts and conveyances, become vested in the appellee, the Chesapeake and Ohio Railway Company, which company is clearly the grantee of the Commonwealth of Virginia of the water of James river, for certain purposes, and is not simply a riparian owner, entitled to an ordinary riparian owner's rights, upon a navigable stream. Under the legislation to which we have adverted, running through more than one hundred years, large enterprises have grown up and many important and costly water privileges and rights have been acquired from these several companies under the grant to them by the State of the right to divert the waters of James river for the purpose of supplying such demands. Among others, the appellee, city of Richmond, has under contract with the James River and Kanawha Company in 1880, and with the Chesapeake and Ohio Railroad Company in 1890, acquired at large cost water privileges increasing its water supply for domestic purposes, as well as for manufacturing purposes.

In 1881 the appellant filed its bill in the Chancery Court of the city of Richmond against the James River and Kanawha Company. the Richmond and Alleghany Railroad Company and the city of Richmond. A copy of this bill is filed as an exhibit with the bill in the instant case, and although the theory of the present bill and the position taken therein is, that the appellee railroad company is not entitled to divert any water from James

river for any purpose, but that appellant has the right to have the water of such river flow down the natural bed of the stream, without diminution or diversion, and to use such water for all beneficial purposes, including any power that may be developed therefrom, yet in its bill filed as an exhibit, which was the basis of a suit brought practically against the same defendants in 1881, appellant admits that the James River Company diverted from the river into its canal so much water as was required to supply, not merely its own wants, but also those of its numerous lessees of water along the line of its canal in Richmond, and that the water thus sold by such company was diverted from the river above and returned to the river below complainant's property. This exhibit further alleged that 400 cubic feet per second was then being diverted at Grant's dam, and concedes the right to divert that amount of water, the object of the suit being to enjoin the diversion of any greater amount. The appellant failed to file with its bill in the instant case the answer of the defendant railroad company to its bill in the suit brought in 1881. Thereupon, the appellee railroad company filed such answer as an exhibit with its demurrer to the bill in the present case. In this answer the Richmond and Alleghany Railroad Company set forth at length its claim of right to use so much of the water of James river as it had a right to use under its charter, saying in part: "This respondent says it is entitled for the reasons hereinbefore given to so much of the water of James river as is needed for the navigation of the canal, and especially that portion of it between Bosher's dam and the outlet lock, and for the supply of water power along its line, and especially between the points named, and denies the right of the complainant to restrict the use of the water for both of said purposes below the amount needed for both, even though the amount

taken may deprive the complainant of sufficient water to run its works with advantage. This respondent also claims that if an amount of water additional to what it has heretofore used is necessary for the navigation of the canal and for the supply of water power to subsequent lessees, it has the right to divert from the river such additional amount. This respondent also claims the right to deepen and widen the channel of the canal between Bosher's dam and the three-mile locks whenever the interests of navigation and water supply shall demand it. At the same time this respondent says that it will take the utmost care not to divert from the river any more water than will be sufficient for the purposes aforesaid, and hopes to be able to leave for the complainant and all others similarly situated, an ample supply of water for the successful working of their mills, unless indeed there be extraordinary and unusual low water in the river."

This answer was filed in January, 1882, in a suit brought to settle the rights of the parties with respect to the same controversy that is now pending, and notwithstanding the emphatic and unequivocal notice of its claim of right then given by the railroad company, and of its intention to exercise such right in the future by taking past appellant's premises all water necessary for the use of all persons then using or who might thereafter desire to use water power from the canal, appellant failed to prosecute its suit further and finally abandoned it, remaining in silent acquiescence in the claim of appellees for twenty-seven years longer until the present suit was brought in 1909. It is insisted that the answer to which reference has just been made cannot be considered on the demurrer, because it is not part of the bill; that filing it as an exhibit with the demurrer does not properly include it in that part of the record which alone can be

looked to on the demurrer. It is an unusual practice to file an exhibit with a demurrer to a bill, and it is not approved. Where the complainant has, as in this case, filed with its bill as an exhibit a selected portion of another record, and it is necessary in order to show the real facts established by such selected portion and the real value thereof to file an additional paper from such other record, the proper practice is to move the court to require the complainant to file with the bill such additional part as may be necessary from the other record. The answer to the bill filed as an exhibit by the appellant was essential to explain and show that such exhibit was not entitled to the weight sought to be attached to it. In this instance, however, although the answer in question was irregularly filed as an exhibit with the demurrer, it was, so far as the record shows, considered by the lower court without objection, and is, therefore, now considered by this court. Its genuineness is not denied and it would be a vain and useless thing, under the circumstances, to remand this cause for the answer in question to be brought into the record through another door than that by which it has already entered.

If the claim asserted by appellant exists now. it existed one hundred and twenty-five years ago when the State of Virginia granted to the James River Company the right to take from this stream an unlimited amount of water for navigation and for power purposes; and yet appellant and its predecessors in title have stood by in silence throughout that great period of time and seen numerous other acts passed by the legislature confirming such right to divert the water in the several successors of the James River Company, has seen innumerable property rights arise, all arising and existing upon the faith reposed in the legislation of the State on the subject without a word of protest against the right of the State

to control and dispose of such water—unless the bill filed by appellant in 1881 could be regarded as a protest, in which bill it admitted the right by prescription to take a certain amount of water, and abandoned its suit after the defendant filed its answer claiming the right to use all the water that was necessary for navigation and power purposes. If appellant had ever possessed the rights it now asserts, a court of equity, under such circumstances of silence and acquiescence in the openly asserted rights of others, would not lend its aid to the destruction of the vast property rights and privileges that have become vested on the faith of the State's ownership and control of the waters of James river and its right to dispose of the same in its discretion.

In conclusion, we are of opinion that the bill and exhibits filed, and the statutes involved, show on their face that the appellee, Chesapeake and Ohio Railway Company, in diverting water from the James river in the manner and to the extent alleged by the appellant, is not exceeding the rights and privileges granted to and vested in it and its predecessors by the State of Virginia.

It follows from what has been said that the bill does not state a case entitling appellant to the relief prayed for, and that the decree complained of, sustaining the demurrers, is without error and must be affirmed.

Keith, P., (*dissenting*):

I am of opinion that, under the laws of this Commonwealth, in all rivers where the tide does not ebb and flow and which are navigable in fact, the title to the bed of the river belongs to the riparian owner, subject, however, in navigable rivers to the right of the public of navigation In so far as the opinion of the court maintains to the contrary of this proposition, I am constrained to dissent.

*Affirmed.*