# Richmond

MARION C. OLIVER, ET ALS. v. CITY OF RICHMOND.

January 17, 1935.

Reheard January 16, 1936.

Present, All the Justices.

The opinion states the case.

*T. Justin Moore* and *Joseph F. Hall,* for the plaintiffs in error.

*James E. Cannon,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiffs in error are Marion C. Oliver, H. S. Saunders, Geo. Y. Webster and Mabel L. Webster, James P. Harrison, Thos. W. Clark, M. D. Nunnally, J. M. Gill, M. S. Alexander, R. S. Christian, Geo. B. White, H. C. Boschen, W. H. Boschen, Wilhelmine R. Schmidt, Frank C. Wood, Mary H. Davenport, Fitch Ingalls, E. L. Harwood, Frank S. Richardson and Dutch Gap Land Corporation. They own land on the James river which they claim will be damaged by the improvement in navigation of the river by reason of the fact that said improvement will cause

the river to be diverted from their lands to the extent that they will not receive the continual flow of the water within the natural bed of the river in the normal volume.

The facts in connection with the present case are substantially the same as those in the companion case of *Ruddock* v. *City of Richmond,* post, page 552, 178 S. E. 44 (the opinion in this latter case having been handed down on January 17, 1935), and they will not be repeated.

It is to be noted at the outset that these plaintiffs in error are asserting their claims only for compensation for damages to their land. None of their land was actually taken by the city in the condemnation proceeding.

The commissioners, who were duly appointed by the court, made their report allowing damages to each of the landowners and they excepted to the report. The city also excepted to the report, but it was regularly confirmed by the court.

The issues raised by the assignments of error involve pure questions of law. This is also true in regard to the cross-error assigned by counsel for the City of Richmond.

Both the plaintiffs in error and the city are complaining of instruction 8 which was given by the court to the commissioners. It is in this language:

"The commissioners are instructed that the defendants have a property right in the continued flow of the waters of James river past their lands within its natural bed and in its natural volume, and if the commissioners believe from their view, or from evidence offered before them, that the construction of an artificial channel for James river by means of the cut-off canals on the lands of the estate of Sallie F. Morgan, deceased, known as 'Meadowville farm,' and the lands of A. D. Williams, known as 'Turkey island,' and Aiken swamp in the manner proposed by the petitioner, will result in such a diversion of the waters of the James river from its natural bed in front of the defendants' lands as will interfere with its normal and natural flow in its natural bed, or cause the said bed to fill up, in whole or in part, or interfere with

the existing drainage of said lands, or cause natural and well-defined water courses on the property of the said defendants to fill up, in whole or in part, or interfere with their normal and natural flow, that the damages thus sustained should be considered by the commissioners in determining the diminution in value, if any, of the remainder of the properties of said defendants not taken in these proceedings."

In the cross-error assigned by the city it takes the position that there is no such thing as private ownership in the flow of water in a navigable stream and that the government or its agencies have the right, in improving navigation in the James river, to divert the water by means of cut-off canals without being required to pay damages that might accrue to the plaintiffs in error. For this reason, as claimed by the city, the court should not have given instruction 8, but should have given instruction "0" offered by the city, which would have told the commissioners that such riparian owners have no private property right in the flow of such stream inconsistent with the public right of navigation and that no damages should be awarded such owners by reason of the diversion or diminution of the flow of water past their lands resulting from the construction of the cut-off canals. In our view this is determinative of the case.

█ The James river, where the work is to be done, is navigable and the beds of navigable streams in Virginia belong to the State.

In 10 R. C. L., at page 82, is found this clear statement of the general rule in the United States:

"Whatever rights a riparian owner may have in the bed and waters of a navigable body of water are subordinate to the public right of navigation, and an exercise of that right in any form which involves no physical occupation of the upland, however much pecuniary injury it may inflict upon a riparian owner, is not a taking in the constitutional sense. Accordingly, the United States or a State may construct works in aid of navigation in the bed

of a navigable watercourse which wholly cut off access from the riparian land to the water, without incurring any obligation to make compensation. Similarly, the public authorities may divert the waters of a navigable stream to improve navigation at another point, without liability to a riparian proprietor; but the right has been denied when the navigation sought to be aided is navigation by means of a wholly artificial canal. * * *."

A number of cases are cited which support the text. Some of them will be referred to later.

In 20 C. J., at page 681, there appears a similar rule in this language: "Riparian ownership is subject to the dominant right of the government to improve navigation, and where no property of the riparian owner is actually taken or directly invaded, compensation cannot be recovered for injuries which are merely incidental to the lawful and proper exercise of the governmental power. It is not a taking of private property to require, in the interests of navigation, a bridge over a navigable river to be changed or removed, or a tunnel to be lowered or rebuilt, nor to erect dams, dykes or other structures, which incidentally cut off access to the water or to a landing in a channel. * * *."

Numerous cases from the Supreme Court of the United States and from many of the highest State courts are cited to support the rule announced.

In 21 A. L. R., at page 206, is found an exhaustive annotation prepared by Mr. Henry P. Farnham, the author of Farnham on Waters. All of the important cases are referred to and many of them criticized. Mr. Farnham says that in England the property right of access is regarded as a basis for compensation in case it is cut off by the improvement of the navigation of a river, but that the general rule in this country is otherwise. He says that: "As presently advised, the courts which have passed directly upon this question, including those of the highest authority, hold that a riparian owner is entitled to no compensation for the cutting off of his right of access to the navi-

gable portion of the streams by work done by the government for the improvement of navigation. The decisions are not numerous, and are not without conflict, but the cases holding such doctrine are as follows:

"*Kaukauna Water Power Co.* v. *Green Bay & M. Canal Co.* (1891), 142 U. S. 254, 35 L. Ed. 1004, 12 S. Ct. 173; *Gibson* v. *United States* (1897), 166 U. S. 269, 41 L. Ed. 996, 17 S. Ct. 578; *United States* v. *Chandler-Dunbar Water Power Co.* (1913), 229 U. S. 53, 57 L. Ed. 1063, 33 S. Ct. 667; *Scranton* v. *Wheeler* (1893), 6 C. C. A. 585, 16 U. S. App. 152, 57 Fed. 803, affirmed in (1900), 179 U. S. 141, 45 L. Ed. 126, 21 S. Ct. 48; *Re Improvement of Navigable Waters* (1881), 17 Op. Attys. Gen. 109; *Re Improvement of Navigable Waters* (1884), 18 Op. Attys. Gen. 64; *Holyoke Water Power Co.* v. *Connecticut River Co.* (1884), 52 Conn. 570; *Marine R. & Coal Co.* v. *United States* (1920), 49 App. D. C. 285, 265 Fed. 437; *Home for Aged Women* v. *Com.* (1909), 202 Mass. 422, 24 L. R. A. (N. S.) 79, 89 N. E. 124; *Slingerland* v. *International Contracting Co.* (1901), 169 N. Y. 60, 56 L. R. A. 494, 61 N. E. 995; *Winifrede Coal Co.* v. *Central R. & Bridge Co.* (1890), 24 Ohio L. J. 173; *Black River Improv. Co.* v. *La Crosse Boom & Transp. Co.* (1882), 54 Wis. 659, 41 Am. Rep. 66, 11 N. W. 443."

█ A more recent note on the subject will be found in 89 A. L. R. at page 1156. The annotator says: "Yet, while some courts have voiced a dissent, the great weight of authority in this country supports the rule that a riparian owner is not entitled to compensation for the interference with or destruction of his right of access to navigable waters, by work done by the government for the improvement of navigation."

In the case of *Scranton* v. *Wheeler*, 179 U. S. 141, 21 S. Ct. 48, 45 L. Ed. 126, the Supreme Court held that a riparian owner was not entitled to damages for injuries arising to his property by reason of the erection of a pier in the improvement of navigation, across the entire front of his land excluding him from access to the channel of a navigable river. This is an important case and its princi-

ples are applicable to the case at bar. The court held that navigable waters are under the control of the government for the purpose of improving navigation and whatever right the riparian owner has, it is always subject to the servitude in respect to navigation in favor of the government.

Counsel for the plaintiffs in error seek to distinguish this case from the case at bar by pointing out that the pier was erected in the river and that there was no question there of the diversion of the water through canals as is the case here. Of course the facts are different but the fundamental principle is the same.

Another important case is *United States* v. *Chandler-Dunbar Water Power Co.*, 229 U. S. 53, 33 S. Ct. 667, 671, 57 L. Ed. 1063. There the power company owned land adjacent to St. Mary's river and under the Michigan law such land carried the title to the middle thread. The falls and rapids afforded valuable water power. The river was navigable. The Federal government constructed a canal and diverted the water from the natural channel. The company claimed a right in the continued flow of the river. The court said that the controlling question was whether the company had any private right or property in the water power of the river which had been taken and for which compensation must be made. In discussing the question this is said:

"This title of the owner of fast land upon the shore of a navigable river to the bed of the river is, at best, a qualified one. It is a title which inheres in the ownership of the shore; and, unless reserved or excluded by implication, passed with it as a shadow follows a substance, although capable of distinct ownership. It is subordinate to the public right of navigation, and however helpful in protecting the owner against the acts of third parties, is of no avail against the exercise of the great and absolute power of Congress over the improvement of navigable rivers. That power of use and control comes from the power to regulate commerce between the States and with

foreign nations. It includes navigation and subjects every navigable river to the control of Congress. All means having some positive relation to the end in view which are not forbidden by some other provision of the Constitution are admissible. If, in the judgment of Congress, the use of the bottom of the river is proper for the purpose of placing therein structures in aid of navigation, it is not thereby taking private property for a public use, for the owner's title was in its very nature subject to that use in the interest of public navigation."

In concluding that the waters of a navigable stream are not capable of private ownership, the court said:

"The broad claim that the water power of the stream is appurtenant to the bank owned by it, and not dependent upon ownership of the soil over which the river flows, has been advanced. But whether this private right to the use of the flow of the water and flow of the stream be based upon the qualified title which the company had to the bed of the river over which it flows, or the ownership of land bordering upon the river, is of no prime importance. In neither event can there be said to arise any ownership of the river. Ownership of a private stream wholly upon the lands of an individual is conceivable; but that the running water in a great navigable stream is capable of private ownership is inconceivable."

Counsel for the plaintiffs in error seek to differentiate this case from the case at bar, because of the variance in the facts, but we think the legal principle is the same and that the case is authority for the position taken by the city.

Other pertinent cases are *Greenleaf-Johnson L. Co.* v. *Garrison,* 237 U. S. 251, 35 S. Ct. 551, 59 L. Ed. 939; *Lewis Blue Point Oyster Cul. Co.* v. *Briggs,* 229 U. S. 82, 33 S. Ct. 679, 57 L. Ed. 1083, Ann. Cas. 1915A, 232; *West Chicago St. R. Co.* v. *People of Illinois ex rel.,* 201 U. S. 506, 26 S. Ct. 518, 50 L. Ed. 845.

In the interesting case of *Thompson* v. *State,* 204 App. Div. 684, 198 N. Y. S. 590, 591, the court, in refusing compensation to the riparian owner of an island in the Hud-

son river who had claimed consequential damages as a result of the improvement of Barge canal, had this to say:

"The Hudson river at this point is a navigable stream (citing cases). This the claimant concedes. Riparian owners along a navigable stream have, as against individuals, certain rights, including access to the stream, but as against organized government, the sovereign State, they have no rights that do not yield to commercial necessities, unless there have been specific grants to them by the State. The right of the government to improve and use the public streams for purposes of navigation and commerce is paramount and riparian rights are held, and enjoyed subject always to this paramount right. (Citing a number of New York cases).

"In respect to the rights of a riparian owner on a navigable stream, the powers of the State and legislature to use the stream and its bed for the purpose of improving navigation are as broad and complete as the powers of the Federal government and Congress in the same field. *Chicago B. & Q. R. Co.* v. *Illinois,* 200 U. S. 561, 593, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; *United States* v. *Rio Grande Dam & Irrigation Co.,* 174 U. S. 690, 703, 19 S. Ct. 770, 43 L. Ed. 1136. These powers rest in, and are inseparable from the sovereign. The stream is public, not private, property. Without a grant from the State, a riparian owner may not lawfully construct a dam or build a bridge across the stream opposite his lands. The State may permit the construction of dams across a public stream, and if it permits such structures, and thereafter they become obstructions to navigation, it may require their removal without compensation, if no contract right from the State conflicts. *Union Bridge Co.* v. *United States,* 204 U. S. 364, 388, 27 S. Ct. 367, 51 L. Ed. 523; *Hinkley* v. *State* (November, 1922), 234 N. Y. 309, 137 N. E. 599; *Barnes* v. *Midland R. Terminal Co.,* 193 N. Y. 378, 85 N. E. 1093, 127 Am. St. Rep. 962. The paramount right in such circumstances absorbs the subject right. When the legislature determined to improve the Hudson river in con-

nection with and as part of the Barge canal, its determination, both as to the nature and the extent of the improvement, was conclusive, and all private rights in the stream must yield. *United States* v. *Chandler-Dunbar Water Power Co.*, 229 U. S. 53, 70, 33 S. Ct. 667, 57 L. Ed., 1063.

"The claimant is entitled to recover the fair market value of her property, for all available uses and purposes, which the State has taken; both the value of that which is taken and consequential damages to her remaining property—the value of the property viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted. *Mississippi & R. River Boom Co.* v. *Patterson*, 98 U. S. 403, 25 L. Ed. 206. But in fixing this market value, the court cannot attribute to the claimant's land any part of the value which might result from a consideration of its value as a necessary part of a comprehensive system of river improvement, nor the value of the property to the government for its particular use. *United States* v. *Chandler-Dunbar Water Power Co.*, 229 U. S. 53, at page 80, 33 S. Ct. 667, 57 L. Ed. 1063; *Boston Chamber of Commerce* v. *Boston,* 217 U. S. 189, 30 S. Ct. 459, 54 L. Ed. 725. The claimant's private property, her island, so far as 'taken' or impaired, must be paid for; these the State may not 'take' without compensation.

"But the stream is not in this sense private property. By the erection of the dam the State took no property right of the claimant; no improvements were destroyed and no lands flowed. Whatever property rights she had in the stream were subject rights, incidental only to her ownership of the island. *Scranton* v. *Wheeler,* 179 U. S. 141, 163, 21 S. Ct. 48, 45 L. Ed. 126."

And this is the court's reference to the *Chandler-Dunbar Water Power Case:*

"The case of *United States* v. *Chandler-Dunbar Water Power Co.,* above cited, deals conclusively with this question. It arose on the St. Mary's river, the outlet of Lake

Superior. The Chandler-Dunbar Company owned the uplands along the stream for about 2,500 feet, opposite which was a decided fall in the stream. Also under the laws of Michigan it owned the bed of the stream to its center; it claimed a valuable water right in the stream. The Federal government, in improving the stream for public navigation, rendered useless this power. The Chandler-Dunbar Company filed its claim and secured in the lower court an additional value to its lands on account of this loss of the water power. The government contended on appeal that this was not a proper consideration in estimating the value of the property taken, and the Supreme Court sustained this contention. The Court of Claims in the case here correctly ruled that it could not take into consideration, in assessing the damages, the availability of the parcel appropriated for a site for a dam."

In the case of *Old Dominion Iron & N. Co.* v. *C. & O. Ry. Co.*, 116 Va. 166, 81 S. E. 108, the appellant filed its bill for the purpose of having its rights determined in the use of the water of the James river above tide. It owned an island known as Belle Isle containing forty-six acres, upon which was located its plant for the manufacture of iron and steel products. The bill alleged that the river at this point was not navigable and complainant claimed the fee in the land to the thread of the stream and that it had the right to have the water of the river flow down the natural bed and to use the water as it passed without diminution or diversion. It was alleged that great quantities of the water of the river were being drawn off and diverted above the island of the complainant and not returned until it reached a point below the island thereby leaving complainant an insufficient supply of water to operate its works. This court held that the James river was navigable at this point and that the diversion of the water into a canal for the purpose of navigation had been authorized by the State for many years and dismissed the complainant's bill. There were other important questions in the case, but upon a fair consideration we think it, in

effect, is a holding that the State, for the purpose of improving navigation, has the right to divert the waters of the James river from the lands of a riparian owner and that such owner has no property right in the normal flow of the river as against uses for the improvement of navigation.

The principal case relied upon by the plaintiffs in error is *United States* v. *Cress,* 243 U. S. 316, 37 S. Ct. 380, 61 L. Ed. 746. Some of the statements found in the opinion support their view of the case and in the main it is authority for them. Another case relied upon is *Avery* v. *Fox* (1868), Fed. Cas. No. 674, 1 Abb. (U. S.) 246. These cases are to a certain extent in conflict with the other Supreme Court decisions touching the question here involved. They express the minority view. We think this court should follow the majority rule which has been previously stated.

It has been argued that the same rule does not apply when the State is improving navigation as applies when the improvement is being made by the Federal government; that in the case at bar the proceedings are had under the Virginia Constitution and statutes, and compensation is authorized under them for damages to land even though no land is taken.

We think the answer to this contention is, that it is the character of the right of the riparian owner in the flowing water in a navigable stream adjacent to his lands that is the test, rather than whether the improvement of navigation is being done by the United States or the State. His right, as we have seen, is subordinate to the improvement of navigation. In other words where there is no actual taking of his property (and as to flowing water in a navigable stream he has no property right which does not yield to navigation), the owner is not allowed compensation for his consequential damage. The right and title of the plaintiffs in error in the waters of James river were at all times subject to the right to improve navigation for the benefit of the public and they will not be heard to complain because instead of the Federal gov-

ernment actually condemning the lands it directed the State to do it under express authority by an Act of Congress for the dominant purpose. They had no property right in the flow of the water by their lands in so far as the government's right to improve navigation is concerned and therefore they are entitled to no compensation if the water is diverted and access to it cut off by the improvement.

Our conclusion is that any damages which may result to the plaintiffs in error from the prosecution of the improvement of navigation in the James river for the public good will not be a result of a taking of their property, but merely incidental to the exercise of the servitude to which their property has always been subject. Acts done in the proper exercise of such governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are held not to be a "taking" within the meaning of the Constitution (section 58). They do not entitle the owner to compensation from the State or municipality. In the old case of *Homochitto River Commissioners* v. *Withers* (1855), 29 Miss. 21, 64 Am. Dec. 126, the court said, in speaking of the diversion of water from a navigable stream by cut-off canals: "Cases of hardship to individuals will doubtless arise, and have arisen, under the exercise of this power; and when the operation of the particular measure is greatly oppressive to an individual * * *, it may constitute a fit subject for appeal to legislative justice for adequate remuneration."

Our conclusion is that the court erred in granting instruction number 8 and that it should have granted instruction "0" offered by the city and which was refused. The judgment is reversed, and final judgment is now entered in favor of the city.

*Reversed.*

HOLT and HUDGINS, JJ., dissenting.

Upon Petition for Rehearing, Richmond, January 16, 1936.

Present, All the Justices.

CAMPBELL, C. J.:

The plaintiff in error filed a petition to rehear the judgment of this court rendered on January 17, 1935, ante, page 538, 178 S. E. 48.

A rehearing was granted and the case reargued at the November, 1935, term of the court. Upon a careful consideration of the questions involved upon the rehearing, we are constrained to adhere to our former opinion, and the judgment of the circuit court is therefore reversed, and final judgment is now entered in favor of the city.

*Reversed.*

HOLT and HUDGINS, JJ., dissenting.