COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, AtLee and Malveaux
Argued at Norfolk, Virginia

**UNPUBLISHED**

CITY OF VIRGINIA BEACH

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1648-17-1              JUDGE RICHARD Y. ATLEE, JR.
                                                    AUGUST 21, 2018
THE VIRGINIA MARINE RESOURCES
  COMMISSION AND PHILIP G. HIGHTOWER


                FROM THE CIRCUIT COURT OF THE CITY OF VIRGINA BEACH
                              H. Thomas Padrick, Jr., Judge

            Gerald L. Harris, Associate City Attorney (Mark D. Stiles, City
            Attorney; Christopher S. Boynton, Deputy City Attorney;
            Joseph M. Kurt, Assistant City Attorney; Office of the City
            Attorney, on briefs), for appellant.

            Kelci A. Block, Assistant Attorney General (Mark R. Herring,
            Attorney General; John W. Daniel, II, Deputy Attorney General;
            Donald D. Anderson, Senior Assistant Attorney General and
            Section Chief, on brief), for appellee The Virginia Marine
            Resources Commission.

            Carl A. Eason (Wolcott Rivers Gates, on brief), for appellee Philip
            G. Hightower.


        Appellant, the City of Virginia Beach ("the City"), appeals a decision of the Circuit Court

of the City of Virginia Beach ("circuit court") affirming the Virginia Marine Resources

Commission's ("VMRC's") issuance of a riparian oyster-planting lease to Philip G. Hightower

(the "Hightower lease").  The City assigns the following errors:

            1.  The [circuit] court erred when it applied the wrong burden of
            proof to this matter because matters of pure statutory interpretation
            by VMRC are not entitled great deference by the [circuit] court.

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

2. The [circuit] court erred when it held the City has no standing to challenge the VMRC's assignment of the Hightower lease.

3. The [circuit] court erred in holding that . . . Code § 28.2-600 does not give VMRC discretion to deny or modify the Hightower lease based upon the lease's likely interference with the City's dredging project.

4. The [circuit] court misapplied Dillon's Rule in holding that VMRC's decision did not violate the City's superior right to improve navigation.

(Citations omitted). For the following reasons, we find no error and affirm.

## I. BACKGROUND

In September 2016, Hightower applied for a riparian oyster-planting lease[1] on submerged lands adjacent to his property on the Lynnhaven River. VMRC determined that the area Hightower requested was larger than that allowed by statute (a half-acre). Hightower amended his application to address that concern and submitted a revised application that complied with that requirement. The City objected to VMRC issuing the lease, arguing that Hightower only sought it in order to prevent the City from planned dredging in that area. The City also alleged that its authority under Code § 28.2-1205 superseded VMRC's role in issuing oyster-planting leases. VMRC responded, noting that under Code § 28.2-600, VMRC "shall assign to [Hightower] such ground wherever the owner may designate within his riparian waters." Because Hightower had satisfied the requirements to receive the lease, under the statute, VMRC "shall" issue it. It also noted that Code § 28.2-1205, concerning permits for "state-owned bottomlands," does not apply to VMRC issuing oyster-planting leases. Over the City's objections, VMRC issued the Hightower lease.

---

[1] A riparian oyster-planting lease is distinct from a "general" oyster lease, as the former requires the applicant/lessee to have an ownership interest in the property adjacent to the lease area. Compare Code § 28.2-600 (riparian oyster-planting leases), with Code § 28.2-603 (general oyster-planting leases).

The City appealed to the circuit court, which rejected the City's arguments and affirmed VRMC's grant of the lease to Hightower. After initially finding that the City did not have standing, the circuit court noted that even if it did, VMRC complied with the law "because among other things, [Code § 28.2-600] mandates that the VMRC shall issue leases under certain circumstances and that it complied with that mandate because the statutory requirements were met." The circuit court also addressed the City's argument that the City possesses the right to control navigation, and that right is superior to VMRC's statutory obligation to issue the oyster lease. The circuit court noted that this argument, while "interesting," was not supported by the statutes or case law presented and that ultimately, the Commonwealth, not the City, controls the bottomland. Ultimately, the circuit court affirmed VRMC's grant of the lease to Hightower.

## II. ANALYSIS

As a preliminary matter, we assume without deciding that the City has standing to challenge the Hightower lease, as it is not necessary to our disposition of this appeal. See, e.g., Bell v. City Council of Charlottesville, 224 Va. 490, 494 n.1, 297 S.E.2d 810, 812 n.1 (1982). In addition, although it was addressed only at oral argument and was not raised on brief, we note that under different circumstances, Code § 28.2-618(5)[2] could be relevant to this matter;

---

[2] The section states, in pertinent part:

> The Commonwealth shall guarantee to any person who has complied with ground assignment requirements the absolute right to continue to use and occupy the ground for the term of the lease, subject to:
>
> . . . .
>
> (5) (Expires July 1, 2019) Municipal dredging projects located in the Lynnhaven River or its creeks and tributaries, including dredging projects to restore existing navigation channels in areas approved by the Commission. Such projects shall be limited to grounds that are condemned, restricted, or otherwise

however, as conceded at oral argument, this language does not apply here because VMRC issued the Hightower lease before the statute was enacted.

A.

The City, as the party appealing VMRC's action, has the burden to designate and demonstrate an error of law subject to review by this Court. See Code § 2.2-4027. Such errors include:

> (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Id. When the alleged error involves issues of law, including interpretation of the Code, we review such decisions *de novo*. Id.

In its first assignment of error, the City argues that the circuit court failed to apply the correct standard of review, and instead reviewed VMRC's decision for "substantial evidence,"[3] as opposed to reviewing the issues of statutory interpretation *de novo*. The City claims that the

---

> nonproductive. The locality shall compensate the lessee for the use of the ground, and if the parties cannot agree on a compensation amount, a court of competent jurisdiction shall determine the value of the ground as of the date it is first disturbed.

Code § 28.2-618 (emphasis omitted).

[3] When an issue on appeal "concerns whether an agency had substantial evidence to support its enforcement of a regulation, courts give 'great deference because of the specialized competence of the agency.'" Mazloumi v. Dep't of Envtl. Quality, 55 Va. App. 204, 209, 684 S.E.2d 852, 855 (2009) (quoting Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996)). The reviewing court may reverse only if "the agency holding represents an 'arbitrary or capricious action that constitutes a clear abuse of the delegated discretion.'" Id. (quoting Va. Alcoholic Beverage Control Comm'n v. York Street Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)).

appellees advocated for the circuit court to apply the substantial evidence standard, and points to statements made by the circuit court at the hearing in claiming that it, in fact, did apply the incorrect standard to legal decisions.

This argument is belied by the record. The City focuses on the fact that both VMRC and Hightower recited the "substantial evidence" standard during the circuit court hearing. Yet, viewed in context, it is evident that any reference either appellee made to "substantial evidence" was part of a broader summary of the distinct standards of review that apply to questions of law and fact in administrative law cases. They did not advocate for the circuit court to review the issues of law presented at the hearing under this more lenient standard. In fact, Hightower noted that this standard applies only "if [the circuit court] finds a factual dispute."

In arguing that the circuit court erred, the City also emphasizes that the judge commented, while VMRC was setting forth what would constitute reversible error, that "generally if you look at the Court of Appeals and the Supreme Court records, it's a graveyard of circuit judges who have overturned certain administrative agencies." The circuit court later noted that the City has a "high burden" in establishing legal error. The circuit court, however, was not reciting a legal standard in either of these statements, but rather was commenting on the general rate of success of appeals of agency decisions. This Court will not "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). The circuit court, when explaining its rulings, made express reference to the relevant statutory language and its plain meaning — it did not reference the substantiality of the evidence or frame its decision as a factual dispute. As such, we find no error in the standard of review applied by the circuit court.

B.

The City next argues that the circuit court erred in holding that Code § 28.2-600 does not give VMRC discretion to deny or modify the Hightower lease based upon the lease's likely interference with the City's proposed dredging project. In its argument, the City relies on (and at times conflates) the public's right to navigation, Congress' right to improve navigation, and the public trust doctrine in its assertion that it has superior rights to control the use of the waterway and thus may prevent VMRC from issuing a riparian oyster lease, despite the plain language in Code § 28.2-600.

Code § 28.2-600 states, in pertinent part:

> Any owner of land bordering on a body of water in the oyster-growing area of this Commonwealth whose shore front measures at least 205 feet at the low-water mark, who has not had as much as one-half acre of ground already assigned him on the front, or whose lease has terminated and is not to be renewed, may apply for planting grounds to the Commissioner. *The Commissioner shall assign to him such ground* wherever the owner may designate within his riparian waters, provided the ground does not encroach into an existing oyster-planting ground lease . . . .

(Emphasis added). Distilled, this section explains that there are limited circumstances under which VMRC could refuse to issue the Hightower lease, such as: (1) the requested area was not within his riparian waters, (2) the area fails to comply with size restrictions, or (3) Hightower had already been issued a lease or the requested area encroached on an existing lease. It is uncontested that Hightower's amended application did not fall into any of these categories, and thus satisfied these requirements set out in Code § 28.2-600. As such, the Code mandated that VMRC issue the Hightower lease.

The City proposes multiple related, and at times tangled, arguments as to why this Court should disregard this mandatory language and find that its interest in the dredging project takes priority over VMRC issuing riparian oyster leases.[4]

Relying on the "public trust" doctrine, which establishes the state's duty to protect the public interest in submerged bottomland, see Ill. Cent. R.R. Co. v. State of Ill., 146 U.S. 387, 433 (1892), the City wishes us to infer, despite the statute's directive, that VMRC's obligation to issue the lease is subordinate to the public's interest in the City's dredging project moving forward.

VMRC is a creature of statute, and must comply with the General Assembly's statutory mandates. Code § 28.2-600 clearly states that, if Hightower complied with the statute's requirements (a fact the City does not dispute), VMRC "shall" issue him the lease. "Properly understood, a 'shall' command in a statute always means 'shall,' not 'may.' No litigant or court should willfully disregard such a legislative command." Rickman v. Commonwealth, 294 Va. 531, 537, 808 S.E.2d 395, 398 (2017). The General Assembly did not include any "public trust" or "public interest" language in Code § 28.2-600, even though it has expressly directed VMRC to consider the public interest in other related statutes, such as when the agency issues general oyster leases, see Code § 28.2-607 (requiring VMRC to consider whether "the assignment is in the public interest"), and issues permits for other bottomland uses, see Code § 28.2-1205(A) (requiring VMRC to "consider the public and private benefits of the proposed project" and that it "exercise its authority under this section consistent with the public trust doctrine"). It declined to include comparable language in Code § 28.2-600. "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when

---

[4] The City conceded at oral argument that the "shall" in Code § 28.2-600 is mandatory; however, it believes that despite this language, that requirement is inferior to the City's other purported rights.

addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." RGR, LLC v. Settle, 288 Va. 260, 295, 764 S.E.2d 8, 28-29 (2014) (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)). Accordingly, VMRC followed the General Assembly's directive in declining to weigh the public's interest in the dredging project when issuing the Hightower lease, and the circuit court did not err in affirming that decision.

In a related argument, the City claims that it has been delegated the Commonwealth's power over navigable waterways. It argues that the General Assembly, via the language granting service districts the right to dredge waterways "to maintain existing uses" under Code § 15.2-2403(1), granted it the same powers as the Commonwealth, which owns the bottomland and can improve navigation to the detriment of certain riparian rights. See Oliver v. City of Richmond, 165 Va. 538, 549, 178 S.E. 48, 53 (1935). The City argues that this authorization under Code § 15.2-2403(1) resolves any concerns about Dillon's Rule, which states that localities possess "only those powers expressly granted [by the Commonwealth], those necessarily or fairly implied therefrom, and those that are essential and indispensable." Commonwealth v. Cnty. Bd., 217 Va. 558, 574, 232 S.E.2d 30, 40 (1977).[5]

Like the circuit court, we disagree with the City's interpretation. Although the City also may acquire "oyster bottoms, oyster-planting grounds, or interest therein necessary for the purpose of such Department or locality" through eminent domain, it may not do so *when said grounds are leased*. Code § 28.2-628. (The City did not condemn, or initiate condemnation proceedings for, the area covered by the Hightower lease prior to it being issued.)

---

[5] The circuit court's interpretation of Dillon's Rule is raised in the City's fourth assignment of error. We decline to explain and analyze Dillon's Rule in depth, as it is inherent to the resolution of the other issues raised and addressed — namely, the General Assembly may both grant *and* limit the powers of localities, and it plainly did so here in prohibiting localities from condemning areas leased for oyster planting. See § 28.2-628.

Code § 15.2-2403(1) does not grant the City unlimited power to encroach on a private property interest whenever it determines one of the permissible uses or actions under Code § 15.2-2403, such as dredging, are necessary. By contrast, the City's authority under this statute is subject to the same statutory prohibition, under Code § 28.2-628, on the City condemning property that is currently subject to an oyster-planting lease.[6] Furthermore, "when one statute addresses a subject in a general manner and another addresses a part of the same subject in a more specific manner, the two statutes should be harmonized, if possible, and when they conflict, the more specific statute prevails." Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 481, 666 S.E.2d 361, 369 (2008). Here, although the General Assembly has conferred upon the City a general right to dredge waterways, it has more specifically forbidden it from "acquir[ing] any right or interest, partial or complete" in leased riparian oyster grounds. Read together, we must

[6] Although it requires a somewhat circuitous route through the Code, it is evident that the General Assembly did not, in empowering service districts to dredge waterways, intend to elevate that authority above private property interests or confer upon the City the Commonwealth's powers over waterways.

The very section the City relies upon explains that, to the extent it "may be necessary and desirable to provide the governmental services authorized by subdivisions 1 and 2" (such as dredging, a service authorized under subdivision 1), a service district may only acquire "*in accordance with [Code] § 15.2-1800*, any . . . rights, title, interest or easements therefor in and to real estate in such district." Code § 15.2-2403(3) (emphasis added). Under Code § 15.2-1800, "[a]cquisition of any interest in real property by condemnation is governed by Chapter 19," which in turn expressly states that "[o]yster bottoms and grounds may be condemned utilizing the procedures . . . required by [Code] § 28.2-628." Code § 15.2-1902(3). To reiterate, Code § 28.2-628 explains that "a locality shall not exercise the right by eminent domain to acquire any right or interest, partial or complete, in and to any oyster-planting grounds leased pursuant to Article 1 (§ 28.2-600 *et seq.*) [riparian oyster-planting leases] or 2 (§ 28.2-603 *et seq.*) [general oyster-planting leases] of Chapter 6." The first category, Article 1 riparian oyster-planting leases, includes the Hightower lease. Thus, following the statutory trail of breadcrumbs, it is evident that the Code expressly forbids a service district from condemning or exercising eminent domain when said grounds are leased for oyster planting. Code § 28.2-628. Whatever authority the General Assembly has granted to the City to dredge waterways does not include the right to do so in an area subject to an active oyster lease, nor does it authorize the City to invalidate a lease issued under Code § 28.2-600.

conclude that the more general right is subject to the more specific prohibition and that the City may not dredge waterways in an area subject to an active oyster lease.

Finally, the City relies on several cases in arguing that it possesses a right to control navigation of public waterways that is superior to the interest of a private oyster-planting leaseholder. These cases establish that Congress, and the Commonwealth, have certain rights over navigable waterways. See United States v. Commodore Park, 324 U.S. 386 (1945); Oliver, 165 Va. at 549, 178 S.E. at 53. Yet the City, although a governmental entity, is neither the Commonwealth nor Congress. These cases do not support the proposition that *all* governmental entities possess these rights to improve navigation, nor do they confer these powers upon the City. Accordingly, the circuit court did not err in rejecting this argument from the City and affirming VMRC's issuance of the Hightower lease.

III. CONCLUSION

The circuit court did not err in upholding VMRC's decision to issue the Hightower lease. As such, we affirm.

Affirmed.