Present:  All the Justices

BURWELL'S BAY IMPROVEMENT ASSOCIATION

v.  Record No. 080698      OPINION BY JUSTICE DONALD W. LEMONS
                                      February 27, 2009
R. FORREST SCOTT, ET AL.


        FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                  Westbrook J. Parker, Judge

    In this appeal, we consider whether a 1925 order of the

Circuit Court of Isle of Wight County granting to a specified

person the "right and privilege" to erect a wharf was

sufficient to convey riparian rights to the recipient's

successors in interest.

              I.  Facts and Proceedings Below

    The Code of Virginia, as in effect in 1924, provided a

means by which a private citizen could petition for the

privilege to build a wharf:

        Any person desiring the privilege of erecting a
        wharf at or on any county landing may, after
        giving notice of his intention by advertising
        such notice at some public place near the
        landing, and also at the front door of the
        courthouse of such county, on the first day of a
        term of the circuit court of said county,
        present to the court at its next term a petition
        for such privilege.  The circuit court may
        determine the same, and may, in its discretion,
        grant such privilege and fix such rates and
        charges upon such conditions and limitations as
        to it may seem fit.

Code § 1998 (1924).[1]  In 1925, pursuant to this statute, Edwin T. Poole ("Poole") petitioned the Circuit Court of Isle of Wight County ("the County") for "the privilege of erecting a wharf" extending into the James River, adjacent to land owned by the County and referred to as the "Public Acre."  The petition was granted, subject to the right of the public to use the wharf in exchange for the payment of certain fees. Although it appears Poole did operate a commercial wharf on the site for some time, at some later point he built and operated a recreational facility known as "the Pavilion" on pilings over the water adjacent to the Public Acre.  The Pavilion was accessed by a pier constructed during the period Poole controlled the property.

The Pavilion and its pier were sold a number of times, eventually coming into the possession of members of the Bracey family in 1989.  The family used the Pavilion as a retreat home, and built an additional pier extending into the river in 1995.  These uses continued until the Pavilion and the connecting piers were destroyed by Hurricane Isabel on September 18, 2003.  R. Forrest Scott and other members of the Bracey family ("the Braceys"), the appellees here, intend to

---

[1] Former Code § 1998 (1924) has been combined with former Code § 1999 (1924) (concerning revocability of granted privileges), and appears in substantially similar form in Code § 62.1-165.

rebuild the Pavilion and piers on their original locations once they are able to finalize plans and funding.

These plans eventually led to conflict with the Burwell's Bay Improvement Association ("the Association"), the appellant here, which had purchased the Public Acre from the County in 1960. In 2006, the Association filed a permit application, seeking authorization to build its own pier extending into the James River from the Public Acre. This new pier would extend past and around the pilings that still remain from the destroyed Pavilion and its piers, and would be situated between a rebuilt Pavilion and the open water of the James River.

The Braceys filed suit against the Association, asserting that they had "acquired by grant, adverse possession or prescription" rights, including riparian rights, over the property. They sought a declaration that they owned riparian rights in the property and a determination of the scope of those rights, a declaration that the Association's proposed pier would interfere with those rights, and an injunction preventing the Association from building its contemplated pier. At the close of the Braceys' case-in-chief, the Association made an oral motion to strike all evidence relating to the Braceys' claim of rights by adverse possession or prescription. The trial court denied the motion.

Following the trial, the court issued a letter opinion, holding that the Braceys owned riparian rights in the property by virtue of the 1925 court order, and that those rights extended to the four-foot line of navigability as depicted on the plat prepared by the Braceys' expert. Based on this holding, the trial court concluded that the Association's pier would impermissibly interfere with the Braceys' rights, and therefore enjoined the construction of the Association's pier. The Association appealed to this Court, and we granted its appeal, limited to the following two assignments of error:

1. The court erred in concluding pursuant to its opinion letter dated January 2, 2008 that appellees had acquired riparian rights pursuant to the Isle of Wight Circuit Court's order dated July 6, 1925 in granting a prior user of the property in question the right and privilege to erect a pier or wharf.

2. The court erred notwithstanding its error in granting riparian rights to appellees but also erred in the manner and extent of the apportionment of the riparian rights granted to appellees.

## II. Analysis

### A. Acquisition of Riparian Rights by Court Order

The Association first challenges the trial court's determination that the Braceys acquired riparian rights by virtue of the 1925 court order granting a "right and privilege of erecting a wharf" to Poole. The legal effect of a court order is a question of law, and we review such issues de novo

on appeal.  <u>Alcoy v. Valley Nursing Homes, Inc.</u>, 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006).

As a general rule, riparian rights are appurtenant to land, and are included when the land is conveyed.  <u>Waverly Water-Front Improv. Co. v. White</u>, 97 Va. 176, 33 S.E. 534 (1899).  The law in Virginia is clear, as both parties agree, that riparian rights are severable from the property to which the rights were originally appurtenant.  <u>Thurston v. City of Portsmouth</u>, 205 Va. 909, 912, 140 S.E.2d 678, 680 (1965).  Further, such severance need not be explicit, and may be accomplished by clear implication when one party conveys to another the right to build a wharf or pier by easement, <u>Irby v. Roberts</u>, 256 Va. 324, 330, 504 S.E.2d 841, 844 (1998), or by lease, <u>see</u> <u>Grinels v. Daniel</u>, 110 Va. 874, 876, 67 S.E. 534, 535 (1910).  In <u>Irby</u>, we reviewed our decision in <u>Grinels</u> holding that a lease for the purposes of building a steamboat wharf carried with it riparian rights:  "[I]n making such a grant . . . the landowner did not 'part with his riparian rights to any greater extent than was necessary to enable the lessees to erect the wharf.'  Implicitly, however, the landowner must part with those rights necessary to fulfill the intent of the grant."  <u>Irby</u>, 256 Va. at 330, 504 S.E.2d at 844 (citation omitted) (quoting <u>Grinels</u>, 110 Va. at 876, 67 S.E. at 535).  However, we have not had occasion to decide the

5

extent and duration of riparian rights obtained by virtue of a court order pursuant to Code § 62.1-165 or its predecessor statutes.

Upon initial consideration, the treatment of riparian rights in the easement and lease contexts suggests that a court order granting the right to build a wharf would accomplish the same severance and conveyance of riparian rights. When Poole obtained from the county the right to construct a wharf pursuant to statute via the 1925 court order, he necessarily obtained from the county the "rights necessary to fulfill the intent of the grant." Irby, 256 Va. at 330, 504 S.E.2d at 844. The trial court explicitly acknowledged this, holding that "a wharf, by its very nature, carries with it riparian rights."

However, the nature of the riparian rights "necessary to fulfill the intent of the grant" by definition depends upon the nature and extent of the grant itself. Grinels concerned two women who obtained a lease, for them and their successors, on a quarter-acre of riverfront property " 'for the purposes of constructing a steamboat wharf, and to give the public an uninterrupted travel thereto and from.' " 110 Va. at 875, 67 S.E. at 535. Some years later, the lessor's successor brought suit, asserting his continuing riparian rights and seeking to restrain unrelated uses of the wharf. Id. at 876, 67 S.E. at

6

535.  We held that although the lessor had conveyed to the lessees the riparian rights necessary to accomplish the stated purposes, that was all he conveyed, and that he retained sufficient rights to prevent uses inconsistent with the purposes of the lease.  Id. at 876-78, 67 S.E. at 535-36.

We have reiterated this concept with regard to riparian rights obtained by easement.  In Irby, a very similar case, we dealt with a deed granting " 'a 30[-foot] easement . . . for the purpose of constructing a pier.' "  256 Va. at 329, 504 S.E.2d at 843.  Relying on Grinels, we held that implicit in the deed was a conveyance of only "those rights necessary to fulfill the intent of the grant."  Id. at 330, 504 S.E.2d at 844.

The nature of the grant here is similarly dispositive.  By its express terms, the court order relied upon by the trial court merely granted to Poole "the right and privilege of erecting a wharf."  The statute under which Poole petitioned the circuit court allowed courts to evaluate petitions for "the privilege of erecting a wharf at or on any county landing," and to "determine the same and . . . grant such privilege and fix such rates and charges upon such conditions and limitations as to it may seem fit."  Code § 1998 (1925) (now Code § 62.1-165).  Whereas the lease in Grinels was to the original lessees and their successors, and the easement in

7

_Irby_, like all easements appurtenant, passed to the successors of the holder of the easement unless extinguished by some legal means, privileges such as the one granted to Poole by court order do not pass to successors. Indeed, the court order specified only Poole as the grantee. When Poole died, the personal privilege he received by court order also expired.

Because the riparian rights implicitly conveyed by a grant are limited to "those rights necessary to fulfill the intent of the grant," _Irby_, 256 Va. at 330, 504 S.E.2d at 844, it follows that when a grant has ceased to be effective, the accompanying riparian rights are no longer effective. The Association argued at trial that the personal nature of the grant defeated the Braceys' claim to have received riparian rights by way of the court order. It has assigned error to the trial court's holding that the riparian rights were not personal to Poole. We agree with the Association. As a matter of law, the Braceys could not have obtained riparian rights under the 1925 court order granting the privilege to Poole.[2]

B. Acquisition of Riparian Rights by Prescription

---

[2] Accordingly, we do not consider the error assigned by the Association to the trial court's apportionment of riparian rights.

The Braceys assert that even if we find the trial court erred in holding that they have riparian rights under the 1925 court order, we should still affirm the judgment of the trial court because the Braceys acquired riparian rights by adverse possession or prescription.  The Braceys made this alternative argument at trial in addition to their claim of riparian rights pursuant to the 1925 court order.

Here, the trial court's ruling did not address adverse possession or prescription, but instead relied solely on the legal effect of the 1925 court order to establish the Braceys' riparian rights.  The trial court did, however, overrule the Association's oral motion to strike the claim relating to prescription or adverse possession at the close of the Braceys' case-in-chief.

In considering a motion to strike for failure to establish a prima facie case, a trial court evaluates the evidence put on by the plaintiff in the light most favorable to that party, and is entitled to draw all fair inferences therefrom.  Baysden v. Roche, 264 Va. 23, 25, 563 S.E.2d 725, 726 (2002); Hadeed v. Medic-24, Ltd., 237 Va. 277, 285-86, 377 S.E.2d 589, 593 (1989).  Consequently, the trial court's denial of the Association's motion to strike did not resolve the issue.  Considering the evidence in the light most favorable to the Braceys, the trial court only determined that

9

the Braceys had presented enough evidence for their claim based on adverse possession or prescription to go forward. The Association then had the opportunity to present relevant evidence and did so in this case. Because the trial court erred in its holding regarding the legal effect of the 1925 court order and did not decide the claim of adverse possession or prescription, we will remand the matter to the trial court for consideration of the legal and factual efficacy of these remaining issues.

## III. Conclusion

For the reasons stated, we hold that the trial court erred in holding that the Braceys obtained riparian rights by virtue of the 1925 grant to Poole. Accordingly, we will reverse the judgment of the trial court and remand the matter for the trial court's consideration of the claims of adverse possession and prescription. The trial court should resolve these questions based upon the evidence previously presented at trial.

<u>Reversed and remanded</u>.