Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Lacy and Koontz, S.JJ.

R. FORREST SCOTT, ET AL.

OPINION BY
v.  Record No. 100149    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
April 21, 2011
BURWELL'S BAY IMPROVEMENT ASSOCIATION

FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
Westbrook J. Parker, Judge

In this appeal, we consider whether the circuit court erred in ruling that a party seeking to establish ownership of riparian rights by adverse possession, or, alternately, a prescriptive easement to use those rights, failed to prove these claims by clear and convincing evidence.  The principal issue we must decide is whether the evidence was sufficient under that standard to show that the use of the riparian rights was exclusive and continuous for the required period of time.

BACKGROUND

In our prior consideration of this case, we gave an extensive history of the ownership of the riverfront property and the riparian rights that are the subject of the dispute between the parties.  Burwell's Bay Improvement Association v. Scott, 277 Va. 325, 327-29, 672 S.E.2d 847, 848-49 (2009).  We will not repeat the full history of the case here, but need only summarize the relevant background that is more fully recounted in our prior opinion.

Since 1960, Burwell's Bay Improvement Association ("Burwell's Bay") has owned a tract of land, commonly referred to as the "Public Acre," along the navigable waters of the James River in Isle of Wight County.  In 1925, pursuant to former Code § 1998 (1924), Edwin T. Poole obtained an order granting him the right to construct a wharf and pier extending into the James River from the riverfront of the Public Acre, which then was owned by Isle of Wight County, and to charge the public set fees for its use.  Over time, Poole's wharf was expanded to include a pavilion and attached piers resting on pilings placed in the subsurface lands of the James River within the area between the mean low-water mark and the line of navigation.

Through a chain of successive recorded transfers, the pavilion and piers were acquired by members of the Bracey family, including R. Forrest Scott, in 1989.  The Bracey family performed extensive renovations to the pavilion and began using it as a family retreat.  The pavilion and the connecting piers in the riparian area of the Public Acre were destroyed by a hurricane in 2003.  Although a number of pilings that supported the original structures remain in place, no reconstruction has occurred.

In 2006, Burwell's Bay received approval from the Virginia Marine Resources Commission ("VMRC") to construct a

2

pier from its property into the riparian area formerly containing the pavilion and piers that had been destroyed in 2003. This pier would extend past and around the pilings that still remain from the destroyed pavilion and piers, and would limit access from any reconstructed facilities to the line of navigation.

On March 7, 2007, Scott and other members of the Bracey family filed a complaint in the Circuit Court of Isle of Wight County seeking a declaratory judgment that they "own riparian and other rights on and adjacent to" the Public Acre, to determine the extent of those rights, and to enjoin the construction by Burwell's Bay of the proposed pier or any other structure within the riparian area of the Public Acre that would interfere with the Bracey family's rights. The Bracey family alleged that their ownership of the riparian rights arose either from their chain of title through Poole or by adverse possession. Alternately, they contended that even if they did not own the riparian rights in question, they had obtained a prescriptive easement to the use of the riparian area encompassed by the pavilion and its piers.

In its first consideration of the case, following a bench trial, the circuit court found that the 1925 court order gave Poole the right to construct and maintain riparian structures over the waters of the James River adjacent to the Public

Acre, that the Bracey family had acquired those riparian rights by title, and that Burwell's Bay's proposed pier would interfere with those rights.  We awarded Burwell's Bay an appeal and reversed the judgment of the circuit court, agreeing with Burwell's Bay that the 1925 court order granted Poole only a personal, non-transferable license.  Id. at 331, 672 S.E.2d at 850.  We noted, however, that while the circuit court had based its ruling on the nature of the rights granted by the 1925 order, it had also denied Burwell's Bay's motion to strike the Bracey family's evidence supporting the alternate claims of adverse possession and prescriptive easement.  Id. at 332, 672 S.E.2d at 851.  Accordingly, we remanded the case for a determination of whether the Bracey family had obtained riparian rights by adverse possession or a prescriptive easement to use those rights.  Id.

On remand, the circuit court took no additional evidence, but considered the matter based upon the prior record and additional argument of the parties received in a hearing held on September 11, 2009.  By an order dated October 28, 2009, the court ruled that the Bracey family had "not proven by clear and convincing evidence their claim of adverse possession, prescription, or adverse use of the riparian rights of Defendant."  Accordingly, the court entered judgment for Burwell's Bay.  We awarded the Bracey family this appeal.

4

## DISCUSSION

### Standard of Review

Before examining the merits of the Bracey family's claim that the circuit court erred in ruling that they had not met their burden of proving adverse possession or prescription, we must determine the appropriate standard of review to be applied in this case. The Bracey family contends that the application of the facts of a given case to determine whether there has been adverse possession or prescription with regard to a real property right presents a question of law that we should review de novo. See, e.g., Quatannens v. Tyrrell, 268 Va. 360, 365, 601 S.E.2d 616, 618 (2004). Burwell's Bay contends that the court's judgment that the Bracey family had not met the burden of proving their claims by clear and convincing evidence necessarily involved its determination of the underlying facts and must be upheld unless plainly wrong. Martin v. Moore, 263 Va. 640, 646, 561 S.E.2d 672, 676 (2002).

Both parties are essentially correct. Issues of adverse possession and prescription present mixed questions of law, reviewed de novo, and fact, to which the reviewing court gives deference to the determination of the trial court. Unlike Quatannens, the case relied upon by the Bracey family, where the facts were "largely undisputed," 268 Va. at 365, 601 S.E.2d at 618, in the original trial of this case the parties

extensively disputed the nature of the Bracey family's use of the riparian rights through their ownership of the pavilion and whether they could prove the applicable time periods required for adverse possession and prescription. Although the circuit court did not make express findings of fact, it was the trier of fact of the disputed issues. Thus, we must give deference to the court's judgment by reviewing the evidence in the light most favorable to Burwell's Bay, the prevailing party. Taking that view of the evidence, we will then apply it to the law of adverse possession and prescription de novo.

### Adverse Possession or Prescriptive Easement of Riparian Rights

Initially, we note that the submerged lands of the James River adjacent to the Public Acre starting at the mean low-water mark are held in trust for the benefit of the public by the Commonwealth, which exercises control over the construction of wharfs, piers and other riparian structures thereon through the oversight of VMRC.[*]  See Code § 28.2-1200

---

[*] On brief, Burwell's Bay contends that the Bracey family's claims of adverse possession and prescriptive easement must fail because they would affect the title of the subsurface lands of the James River belonging to the Commonwealth. No such claim was asserted by the Bracey family in their complaint. Rather, they were clearly asserting claims only to apportion Burwell's Bay's riparian rights that are appurtenant to the Public Acre.

et seq.  However, it has long been recognized that while the Commonwealth holds the title to the bed of a navigable river, such as the James River, the owners of the adjacent land have certain riparian rights for the use of the river.  Taylor v. Commonwealth, 102 Va. 759, 773, 47 S.E. 875, 880 (1904).  The term "riparian rights" refers to a specific set of five benefits that accrue to the owner of land adjacent to a navigable river.  Specifically, the owner has

> "The right to be and remain a riparian proprietor and to enjoy the natural advantages thereby conferred upon the land by its adjacency to the water."

> "The right of access to the water, including a right of way to and from the navigable part."

> "The right to build a pier or wharf out to navigable water, subject to any regulations of the State."

> "The right to accretions or alluvium."

> [And,] "[t]he right to make a reasonable use of the water as it flows past or laves the land."

Id. at 773, 47 S.E. at 880-81.

To prove adverse possession of riparian rights against the true owner, "the plaintiff 'must show actual, hostile, exclusive and continuous possession for the period of the statutory bar' by 'acts of such notoriety that the true owner has actual knowledge, or may be presumed to know, of the adverse claim.' "  Custis Fishing & Hunting Club, Inc. v. Johnson, 214 Va. 388, 392, 200 S.E.2d 542, 545 (1973) (quoting

7

Leake v. Richardson, 199 Va. 967, 976, 103 S.E.2d 227, 234 (1958)).  Likewise, a party may obtain a prescriptive easement to use riparian rights in a similar manner.  Leake, 199 Va. at 977-78, 103 S.E2d at 235.  In either case, the claimant must prove all the elements by clear and convincing evidence.  Harkleroad v. Linkous, 281 Va. 12, 18, 704 S.E.2d 381, 383-84 (2011).

The Bracey family contends that the circuit court erred in failing to award them ownership of the riparian rights at issue because the evidence shows that they have met each of the requirements for adverse possession for the statutorily-mandated period of fifteen years.  Code § 8.01-236.  Likewise, they contend that, even if they have not acquired title to the riparian rights, the court should have granted them a prescriptive easement to use those rights because the evidence shows that the use has extended for more than the twenty years required to obtain an easement by prescription.  See, e.g., Hafner v. Hansen, 279 Va. 558, 563, 691 S.E.2d 494, 497 (2010).

Burwell's Bay responds that the circuit court's judgment that the Bracey family did not prove by clear and convincing evidence their claims of adverse possession of the riparian rights, or a prescriptive easement for the use thereof, should be upheld.  This is so, Burwell's Bay contends, because the

evidence failed to show that the Bracey family's occupation of the riparian area was continuous for the requisite periods because their occupation began in 1989 and ended when the pavilion was destroyed in 2003. Burwell's Bay further contends under the facts of this case that the Bracey family cannot use the doctrine of tacking to claim the period of occupation by the previous owners of the pavilion, nor can they use the continued presence of a number of the pilings as evidence of their continued occupation of the riparian area after 2003. Thus, Burwell's Bay maintains that the Bracey family occupied the riparian area for at most approximately 14 years, a period insufficient to establish either adverse possession or prescription.

While in most respects the law of adverse possession and prescription are consistent in application, "[t]he character of the acts necessary to vest one with a title by adverse possession [or a prescriptive right] varies with the nature of the property involved, the conditions surrounding it, and the use to which the property may be adapted." Leake, 199 Va. at 976, 103 S.E.2d at 234. "Where the land is . . . under the water . . . the acts of [adverse] ownership must indicate a change of condition, showing a notorious claim of title, accompanied by the essential elements of adverse possession." Id.

9

Likewise, a claim to riparian rights over navigable waters presents a unique condition of the property that requires a special consideration of the "use to which the property may be adapted."  The construction and maintenance of permanent structures in a river clearly "indicate a change of condition, showing a notorious claim of title" to riparian rights.  Accordingly, there is no question that the Bracey family's ownership of the pavilion constituted both an "actual" and "hostile" assertion of the right to occupy the riparian area adjacent to the Public Acre, and that their occupation was "continuous" between 1989 and 2003.

However, in 2003 when the pavilion was destroyed, leaving only a number of the associated pilings, the principal evidence of the Bracey family's occupation of the riparian area ended.  In order to assert a continuing claim to the riparian rights, it would be necessary for the Bracey family to have shown that they continued to exert "actual" control over the riparian area by acting to exclude others from entering it, or by taking positive, visible actions to reconstruct the destroyed structures.  Between 2003 and 2007, when they filed their complaint for declaratory judgment, however, the record contains no appreciable evidence of such action taken by the Bracey family to assert any continuing claim over the riparian area formerly occupied by the pavilion

10

and its associated piers.  Thus, we hold that the Bracey family did not prove by clear and convincing evidence that they had asserted an adverse claim to ownership of the riparian rights for the requisite period of time.

Alternately, the Bracey family contends that even if they cannot show that they asserted a continuing claim to the riparian rights after 2003, they still can establish the requisite time periods for adverse possession or prescription by including the period of occupation by the prior owners of the pavilion under the doctrine of tacking.  We disagree.

The doctrine of tacking, that is, the combining of successive occupations or uses of property by adverse or prescriptive claimants to establish the requisite time period for the claim asserted, is little discussed in our case law.  Clearly, however, the party making a claim where tacking is asserted must prove when the adverse or prescriptive period began to run.  McNeil v. Kingrey, 237 Va. 400, 405, 377 S.E.2d 430, 433 (1989); Clatterbuck v. Clore, 130 Va. 113, 121, 107 S.E. 669, 672 (1921).  Therefore, the claimant must introduce clear and convincing evidence to prove the date or period of time when all of the elements of proof for adverse possession or prescription were first established.  The doctrine of tacking does not permit a litigant to add periods of time that include the actions of a predecessor in title when such

11

actions were by right, permission, or agreement.  See, e.g.,
Harris v. Deal, 189 Va. 675, 689-90, 54 S.E.2d 161, 167-68
(1949); Edmunds & Abernathy v. Pike, 136 Va. 270, 274-75, 118
S.E. 91, 92 (1923); Sims v. Capper, 133 Va. 278, 287-88, 112
S.E. 676, 679 (1922).  In order to tack successive claims, a
party must establish that any prior period of possession that
is to be included in their claim was adverse, as defined by
Virginia law.  Calhoun v. Woods, 246 Va. 41, 45, 431 S.E.2d
285, 287-88 (1993).  Tacking does not allow time to be added
simply because the activities of prior occupiers were similar
to the uses that are asserted by a subsequent claimant.
Rather, the evidence must show that the prior occupants were
asserting the same claims to possession of, or a prescriptive
easement over, the property in question.

Here, the evidence showed that the two most recent prior
owners of the pavilion were Le Bay, Inc. and John Read.  Scott
testified that Read had partitioned off part of the pavilion
and "lived in that for a period of time" and also stored some
materials "for his construction outfit."  No evidence was
presented as to what Le Bay, Inc.'s activities were.
Moreover, no evidence was presented that Read or Le Bay, Inc.
ever asserted an exclusive claim to the riparian rights at
issue.

12

Additionally, the Bracey family's own evidence showed that the pavilion and its attached piers had long been considered as open to the public for various uses by the Bracey family's predecessors in title. Following its construction, the pavilion was viewed as an extension of the Public Acre, and continued to be so viewed even after the Public Acre was sold by the County to Burwell's Bay. While undoubtedly the prior owners of the pavilion from time to time operated it for commercial purposes, it is equally clear that government bodies, civic groups, and members of the public also used the facilities as a matter of course.

This evidence falls well below the clear and convincing standard required to prove adverse possession or prescriptive use of the riparian rights by the immediate prior occupants. Thus, the Bracey family could not use tacking to establish the requisite time periods prior to the destruction of the pavilion in 2003. Accordingly, the Bracey family failed to present clear and convincing evidence of an exclusive, continuous claim to ownership or use of the riparian rights.

CONCLUSION

For these reasons, we hold that the circuit court did not err in ruling that the Bracey family had not met its burden of proving either ownership by adverse possession of the riparian

rights or a prescriptive easement to their use.  Accordingly, the judgment of the circuit court will be affirmed.

<u>Affirmed</u>.