PRESENT: All the Justices

LYNNHAVEN DUNES CONDOMINIUM
ASSOCIATION

                                          OPINION BY
  v.  Record No. 120086          JUSTICE CLEO E. POWELL
                                       November 1, 2012
CITY OF VIRGINIA BEACH

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                     A. Bonwill Shockley, Judge

        In this appeal, we consider whether an ordinance

authorizing the acquisition of an easement by condemnation also

confers the authority to acquire the easement by an action to

quiet title.  We further consider whether the evidence in this

case was sufficient to support the circuit court's ruling that

the City of Virginia Beach (the "City") proved an implied

dedication of the disputed easements and whether the circuit

court erred in ruling that Lynnhaven Dunes Condominium

Association ("Lynnhaven") was not entitled to compensation for

its loss of riparian rights.

                            I. Background

        The present case concerns the beach along the Chesapeake

Bay from First Landing State Park to the Lesner Bridge, referred

to as "Cape Henry Beach."  The facts regarding the state of Cape

Henry Beach and the City's plan to replenish it are

substantially the same as those in the companion case of 3232

Page Avenue Condominium Unit Owners Ass'n v. City of Virginia

Beach, 284 Va. 639, 735 S.E.2d 672 (2012) (this day decided), therefore, we will only address those facts unique to this case.

On February 25, 2009, the City filed a "Petition for Condemnation to Confirm Public Easements," seeking to acquire title to the easements from Lynnhaven. In the petition, the City sought to take or confirm a "perpetual recreational easement and a shore protection/construction easement" (collectively, the "Easements").

In its "Answer, Grounds of Defense and Objections to Jurisdiction," Lynnhaven argued that the City did not have legal authority to condemn the property, as the City has not complied with the statutorily required procedures for a condemnation proceeding. In an order dated July 24, 2009, the circuit court overruled Lynnhaven's objections and ruled that it would rule on the issue of ownership of the Easements "at or immediately after the hearing to determine just compensation."

Recognizing that the issue of ownership of the Easements could render the issue of just compensation moot, the parties mutually agreed to hold the ownership trial prior to the just compensation trial. Additionally, prior to trial Lynnhaven raised the issue of compensation for its riparian rights. According to Lynnhaven, the beach replenishment project created an artificial strip of land owned by the Commonwealth that cuts off Lynnhaven's connection to the Chesapeake Bay. Thus,

Lynnhaven argued that, regardless of who actually owned the Easements, the City would still be required to compensate Lynnhaven for the loss of its riparian rights.

During the ownership trial, the circuit court heard evidence that, in a plat recorded in 1926 (the "1926 plat"), Cape Henry Beach was depicted as "Ocean Avenue." In 1954, however, the Board of Supervisors abandoned Ocean Avenue. In 1999 another plat was recorded (the "1999 plat") resubdividing certain lots of the 1926 plat. The 1999 plat did not contain any reference to Ocean Avenue and made no mention of any public interest in Cape Henry Beach.

The City also presented evidence that the public used the entirety of Cape Henry Beach extensively since at least the late 1940's. Further evidence was presented that the City regulated Cape Henry Beach as early as 1938 and that the City's police force patrolled the entirety of Cape Henry Beach around the clock since at least 1976. Similarly, evidence was presented that, from at least 1980, the City maintained Cape Henry Beach. Such maintenance included daily garbage removal from trash barrels provided by the City, raking the beach to remove litter, grading the beach, annually planting new beach grass and removing dead sea life.

After hearing all of the evidence, the circuit court granted the City's petition, ruling that

The City has demonstrated by a preponderance of the evidence, and to the extent necessary by clear and convincing evidence and/or by unequivocal evidence, that it acquired by implied dedication as a result of the recordation of a 1926 plat . . . a recreational easement and a maintenance easement in the subject property . . . ;

In addition to the 1926 plat, the circuit court relied upon the City's continued "policing, cleaning, draining, and public use over the years" as evidence of the City's acceptance of the implied dedication. The circuit court further determined that Lynnhaven was not entitled to compensation for the loss of its riparian rights because Lynnhaven's connection to the Chesapeake Bay was cut off as a result of improvements to navigation.

Lynnhaven appeals.

## II. Analysis

On appeal, Lynnhaven argues that the City failed to follow the statutory requirements necessary to exercise its power of eminent domain. Lynnhaven also takes issue with the circuit court's determination that the City had acquired the Easements through implied dedication and the circuit court's determination that Lynnhaven was not entitled to compensation for the loss of its riparian rights.

## A. Jurisdiction

Lynnhaven argues that, because the City did not pass an ordinance authorizing the acquisition of the property by

4

quieting title, the City could not bring an action to quiet

title in conjunction with a condemnation proceeding.  Lynnhaven

relies heavily on Code § 15.2-1903(B)[1], which requires the City

to adopt a resolution or pass an ordinance directing acquisition

of the property prior to the initiation of condemnation

proceedings.  Therefore, according to Lynnhaven, the

condemnation proceeding was necessarily void and the circuit

court did not have jurisdiction to hear this case.[2]

"[A]n act of the legislature delegating to a municipality

the power of eminent domain must be strictly construed in favor

of the landowner."  Ruddock v. City of Richmond, 165 Va. 552,

562, 178 S.E. 44, 47 (1935).  "The power can only be exercised

for the purpose, to the extent, and in the manner provided by

_____

[1] Code § 15.2-1903(B) states:

> Prior to initiating condemnation proceedings, the
> governing body shall, after a public hearing,
> adopt a resolution or ordinance approving the
> proposed public use and directing the acquisition
> of property for the public use by condemnation or
> other means. The resolution or ordinance shall
> state the use to which the property shall be put
> and the necessity therefor. Furthermore, other
> political subdivisions of the Commonwealth shall
> also be required to hold a public hearing prior
> to initiating condemnation proceedings.

[2] In addition to the ordinance argument, Lynnhaven also
argues that the City may not condemn property rights that it
also claims to own.  As we have already addressed this issue in
3232 Page Avenue, 284 Va. at ___, ___ S.E.2d at ___, we need not
address the issue again here.

5

law." Bristol Redevelopment & Housing Auth. v. Denton, 198 Va.

171, 178, 93 S.E.2d 288, 293 (1956).

The ordinance at issue in the present case was passed by

the Virginia Beach City Council on December 9, 2008.  In the

ordinance, the City Council recognized that

> there are unresolved issues regarding the title
> to the sandy beaches along Cape Henry Beach, the
> rights of the public to recreate and the rights
> of the City to maintain, monitor and exert
> control over these beaches;

> The City Council went on to state that it

> believes that the City has rights to protect the
> Cape Henry beaches and preserve them for public
> recreation, based upon a long history of both
> public use and the City's maintenance, monitoring
> and control; however, upon information and
> belief, private property owners contend there is
> no public right to recreate or City right to
> maintain the beaches;

> Accordingly, the ordinance authorized:

> the acquisition by purchase or condemnation,
> pursuant to Sections 15.2-1901, et seq., and
> Title 25.1 of the Code of Virginia of 1950, as
> amended, of public beach easements (the
> "Easements") for public recreation and shore
> protection as stated above and for other related
> public purposes for the preservation of the
> safety, health, peace, good order, comfort,
> convenience, and for the welfare of the people in
> the City of Virginia Beach, across the areas of
> the Cape Henry beaches, to the extent that public
> easements or property ownership are not already
> confirmed . . . .

To facilitate the acquisition of the required easements,

the ordinance specifically authorized the City Manager:

6

to make or cause to be made on behalf of the City
of Virginia Beach . . . a reasonable offer to the
owners or persons having an  interest in the
property that will be affected by said Easements.
If refused, the City Attorney is hereby
authorized to institute proceedings to condemn
said Easements.

There are three fatal flaws in Lynnhaven's argument.  The
first flaw is that, in relying on Code § 15.2-1903(B), Lynnhaven
conflates an action to quiet title with a condemnation
proceeding.  The plain language of Code § 15.2-1903(B)
establishes that it only applies to condemnation proceedings;
the statute is silent with regard to actions to quiet title.
Thus, Code § 15.2-1903(B) has no applicability to a locality's
action to quiet title.

The second flaw inherent in Lynnhaven's argument is that,
while the ordinance does not specifically authorize an action to
quiet title, Virginia Beach Ordinance § 2-169 clearly authorizes
the City Attorney

to commence and prosecute all actions and suits
to be brought by the city that he deems necessary
or proper to protect the interests of the city
before any tribunal in the city or state, whether
in law or in equity.

The ordinance authorizing condemnation makes it clear that
the City believes it has an interest in the Easements by implied
dedication "based upon a long history of both public use and the
City's maintenance, monitoring and control."  Therefore, as
Virginia Beach Ordinance § 2-169 authorizes the City Attorney to

7

protect the City's interests, and the City believes it has an interest in Cape Henry Beach, an action to quiet title is necessarily authorized.

The third flaw is that, contrary to Lynnhaven's argument, the action brought by the City was, in fact, a condemnation proceeding. As we explain in 3232 Page Avenue, 284 Va. at ___, ___ S.E.2d at ___, determining the ownership of the property subject to condemnation is necessarily part of the condemnation proceeding. See Code §§ 25.1-222 and -241. Thus, because the ordinance at issue in this case specifically authorized a condemnation proceeding, which is the type of action brought by the City, the condemnation proceeding is not void and the circuit court had jurisdiction to hear the case.

## B. Implied Dedication

Lynnhaven next argues that the circuit court erred in finding that the City had acquired ownership of the Easements by implied dedication. Lynnhaven contends that the City's acceptance of the 1999 plat, which contained no mention of any public interest in the property, demonstrates a second abandonment of the Easements on the part of the City. Lynnhaven goes on to argue that, notwithstanding the 1954 abandonment and the 1999 plat, the original location of Ocean Avenue has moved due to the natural accretion of the beach and therefore any easements created by the presence of Ocean Avenue in the 1926

8

plat are not in the same location as the Easements sought by the City.

In the present case, the circuit court relied entirely on the existence of the 1926 plat as evidence of an implied dedication of the Easements.  However, it is readily apparent that the circuit court did not consider the 1954 abandonment of Ocean Avenue in its ruling.  This Court has previously recognized

> When a highway or street is discontinued or abandoned the easement therein for public use is extinguished, and the absolute title and right to exclusive possession thereto is presumed to be in the abutting landowners in the absence of evidence to the contrary.

Heller v. Woodley, 202 Va. 994, 998, 121 S.E.2d 527, 531 (1961) (emphasis added).

Thus, in light of the City's 1954 abandonment of Ocean Avenue, we hold that the circuit court erred in ruling that the City acquired the Easements as a result of the recordation of the 1926 plat.  This Court has long recognized, however, that "[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground."  Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963) (citations omitted).  We have limited application of the "right for the wrong reason" doctrine to those cases where the right reason is

supported by the record, no further development of the facts is necessary to support it and the appellant was "on notice in the trial court that he might be required to present evidence to rebut it." Rives v. Commonwealth, 284 Va. 1, 2-3, 726 S.E.2d 248, 250 (2012).

In the present case, there is ample evidence demonstrating that the public has had open access to the entirety of Cape Henry Beach since at least 1954, the City has patrolled and maintained the Easements for over thirty years, and Lynnhaven has never objected to the City's exercise of dominion and control over the Easements. Thus, we find that, notwithstanding the 1999 plat, there is sufficient evidence proving that there was an implied dedication and acceptance of the Easements.

Turning to the 1999 plat, we note that Code § 15.2-2265 specifically negates Lynnhaven's argument. The version of Code § 15.2-2265 in effect in 1999 states, in relevant part:

> When the authorized officials of a locality within which land is located, approve in accordance with the subdivision ordinances of the locality a plat or replat of land therein, then upon the recording of the plat or replat in the circuit court clerk's office, all rights-of-way, easements or other interest of the locality in the land included on the plat or replat, except as shown thereon, shall be terminated and extinguished, except that an interest acquired by the locality by condemnation, by purchase for valuable consideration and evidenced by a separate instrument of record, or streets, alleys or easements for public passage subject to the

10

> provisions of § 15.2-2271 or § 15.2-2272 shall
> not be affected thereby.

(Emphasis added.)[3]

Thus, under Code § 15.2-2265, an easement for public passage may only be terminated or extinguished if the requirements of Code § 15.2-2271 or -2272 are met. Both sections require either a separate writing or the passage of an ordinance before an easement for public passage may be terminated or extinguished. As Lynnhaven has presented no evidence of a separate writing or passage of an ordinance terminating or extinguishing the Easements, which were for public passage, the recordation of the 1999 plat has no effect on the existence of the Easements.[4]

## C. Riparian Rights

Lynnhaven argues that the circuit court erred in ruling that, because Lynnhaven's riparian rights were destroyed to improve navigation, such a loss was non-compensable. Lynnhaven concedes that dredging Lynnhaven Inlet was necessary to improve navigation, but contends that the placement of sand on Cape Henry Beach was not. Lynnhaven further notes that the City's

---

[3] This language is identical to the language appearing in the corresponding portion of Code § 15.2-2265 currently in effect.

[4] It is further worth noting that there was no indication on the 1999 plat that any easements or property rights had been vacated.

11

petition for condemnation only referenced sand replenishment/re-nourishment of the beach and makes no reference to navigation.

Unlike its other assignments of error, Lynnhaven's riparian rights argument arises, not from the circuit court's decision to grant the Easements, but from the City's particular use of the maintenance easement. Specifically, Lynnhaven objects to the fact that, by replenishing the beach, the City's actions have allowed the Commonwealth to create an artificial strip of land that has severed Lynnhaven's connection to the Chesapeake Bay.

One of the benefits that accrues to the owner of riparian land is the " 'right to accretions or alluvium.' " Scott v. Burwell's Bay Improvement Ass'n, 281 Va. 704, 710, 708 S.E.2d 858, 862 (2011) (quoting Taylor v. Commonwealth, 102 Va. 759, 773, 47 S.E. 875, 880-81 (1904)). This Court has recognized that:

> "This riparian right is property, and is valuable; and though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and, if necessary, that it be taken for the public good upon due compensation."

Taylor, 102 Va. at 771, 47 S.E. at 880 (quoting Yates v. Milwaukee, 77 U.S. 497, 504 (1871)).

Although the owner of the riparian rights "automatically takes title to dry land added to his property by accretion. . .

12

formerly submerged land that has become dry land by avulsion continues to belong to the owner of the seabed (usually the State)." Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot., 130 S. Ct. 2592, 2598 (2010).

We have recognized that a riparian owner's property rights are "subordinate to the improvement of navigation. In other words where there is no actual taking of his property . . . the owner is not allowed compensation for his consequential damage." Oliver v. Richmond, 165 Va. 538, 549, 178 S.E. 48, 53 (1935). In Oliver, a portion of the James River was straightened for the purpose of improving navigation. Landowners with property along the original course of the river claimed that their riparian rights were damaged "to the extent that they will not receive the continual flow of the water within the natural bed of the river in the normal volume." Id. at 540, 178 S.E. at 48. This Court ruled against the landowners, holding:

> [The landowners] had no property right in the
> flow of the water by their lands in so far as the
> government's right to improve navigation is
> concerned and therefore they are entitled to no
> compensation if the water is diverted and access
> to it cut off by the improvement.

Id. at 550, 178 S.E. at 53.

We note, however, that there is a significant difference between the facts of Oliver and the present case. In Oliver, the navigational improvement directly affected the flow of the

river, resulting in a direct loss of riparian rights.  In the

present case, the navigational improvement had no effect on the

flow of the Chesapeake Bay; rather it improved navigation in

Lynnhaven Inlet and provided the sand used to replenish the

beach.  It is the placement of this sand that caused the alleged

loss of riparian rights.[5]  Thus it is clear that <u>Oliver</u> is not

particularly apposite to the present case.

In light of the fact that there are no Virginia cases that

address this particular issue, we look to the jurisprudence of

other states.  We are particularly persuaded by the logic of the

Supreme Court of Massachusetts in <u>Michaelson v. Silver Beach

Improvement Ass'n</u>, 173 N.E.2d 273 (Mass. 1961).  We recognize

that, although <u>Michaelson</u> is procedurally different from the

present case, certain relevant facts are markedly similar.  In

<u>Michaelson</u>, a beach was created at the base of a seawall as a

result of dredging a harbor by the public works department of

Massachusetts.  <u>Id.</u> at 274.  The owners of the properties

adjoining the seawall brought an action to enjoin the public's

use of the beach adjoining their property.  In determining

whether the property owners were entitled to an injunction, the

Supreme Court of Massachusetts examined what effect the creation

---

[5] Indeed, it is further worth noting that the two-prong test
announced in Oliver requires (1) the diversion of water and (2)
access to the water be cut off by the navigational improvement
itself.  <u>Oliver</u>, 165 Va. at 550, 178 S.E. at 53.

14

of the beach had upon the littoral[6] rights of the owners.  The

Supreme Court of Massachusetts explained that, assuming the

dredging project was for navigational purposes:

> It does not follow . . . that the Commonwealth in
> carrying out such a project may cast the material
> dredged along the shore line of littoral
> proprietors and thereby cut off their exclusive
> access to the sea.  The littoral or riparian
> nature of property is often a substantial, if not
> the greatest, element of its value.  This is true
> whether the owner uses his access to the sea for
> navigation, fishing, bathing, or the view.

Id. at 277.

The Supreme Court of Massachusetts noted that, under

Massachusetts law, the only recognized reasons that the

---

[6] Throughout their arguments, both parties refer to the rights at issue in this case as "riparian" rights.  The term "riparian" is usually defined as "[o]f, relating to, or located on the bank of a river or stream (or occasionally another body of water, such as a lake)."  Black's Law Dictionary 1441 (9th ed. 2009); see also Scott v. Burwell's Bay Improvement Ass'n, 281 Va. 704, 710, 708 S.E.2d 858, 861 (2011) ("The term 'riparian rights' refers to a specific set of five benefits that accrue to the owner of land adjacent to a navigable river").  The more proper term for the rights at issue in this case is "littoral," which is defined as "[o]f or relating to the coast or shore of an ocean, sea, or lake."  Black's Law Dictionary, at 1018.

The General Assembly's use of the term "riparian" throughout the Code, however, is inconsistent with the strict definition of the term.  See, e.g., Code § 28.2-600 (dealing with the assignment of oyster planting grounds within the "riparian waters" belonging to "[a]ny owner of land bordering on a body of water . . .").  Accordingly, we recognize that, in Virginia the term "riparian" is defined as: of, relating to, or abutting any body of water.  See generally Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 130 S. Ct. 2592, 2598 fn. 1 (2010) ("Many cases and statutes use 'riparian' to mean abutting any body of water").

Commonwealth could cut off a property owner's littoral rights without compensation is "to regulate and improve navigation and the fisheries."[7]  Id.  "Whether any other powers may exist need not be decided here; but no power to build beaches for bathing purposes without compensating the littoral owners seems to have been recognized."  Id.  Thus, the Supreme Court of Massachusetts held "if the Commonwealth desires to create land in connection with a project to improve navigation, <u>there must be a connection between the two projects and this connection must be substantial and reasonable</u>.  Otherwise, there would be no limit to the Commonwealth's power."  Id. (emphasis added).

> To harmonize the public and the private interests, it is necessary to demand a substantial relation between the project and the public powers over navigation . . . if the Commonwealth is to create land, have title, and leave the littoral owners without a remedy in damages.  The proper test is that the related project is immune from private rights only when it is so related to a project under the acknowledged public powers in the navigable waters (such as over navigation and the fisheries) that enjoyment of the latter project would be substantially impaired without the creation of the former.

Id. at 277.

As in Massachusetts, Virginia has not recognized a right to build beaches for bathing purposes without compensating the

---

[7] Unlike Massachusetts, Virginia has not recognized that a property owners' riparian rights are subordinate to the Commonwealth's right to improve its fisheries.

16

riparian owners.  Similarly, no right to replenish eroding
beaches without compensation has been recognized.  Thus, the
only reason the City can rely on to cut off a property owners
riparian rights without compensation is the regulation and
improvement of navigation.  Accordingly, our determination of
whether the loss of Lynnhaven's riparian rights is sufficiently
related to the efforts to regulate and improve navigation turns
on whether the dredging of Lynnhaven Inlet would be
"substantially impaired" without the Cape Henry Beach
replenishment project (i.e. the creation of the artificial strip
of land that severed Lynnhaven's connection to the Chesapeake
Bay).

Here, it is clear that the connection between the dredging
project and the beach replenishment project was a colorable
relationship at best.  Obviously the sand dredged from Lynnhaven
Inlet had to be placed somewhere.  However, the record is devoid
of any evidence establishing that Cape Henry Beach was the only
location available for sand placement.  It is worth noting that
Cape Henry Beach was not even originally designated to receive
the sand from the dredging of Lynnhaven Inlet.  Indeed, the
entire reason that the City needed to get a permit from the VRMC
to have the sand placed on Cape Henry Beach was because, in
authorizing the U.S. Army Corps of Engineers to dredge Lynnhaven
Inlet, Congress authorized the placement of the sand on Ocean

17

Park Beach, not Cape Henry Beach.  Thus, in light of the fact that at least one other beach was available and, indeed, originally chosen to receive the sand from the dredging project, it cannot be said that the dredging project would have been "substantially impaired" if Cape Henry Beach were unavailable for sand placement.[8]  Accordingly, Lynnhaven must be compensated for the loss of its riparian rights.

## III. Conclusion

For the foregoing reasons, we hold that the authorizing ordinance fully encompassed the City's actions in bringing this condemnation proceeding and that the evidence was sufficient to support the circuit court's ruling that the City had proved that it had acquired the Easements by implied dedication.  The circuit court erred, however, in ruling that Lynnhaven's loss of riparian rights was non-compensable, as the beach replenishment project was not sufficiently related to the dredging of Lynnhaven Inlet because the failure to place sand on Cape Henry Beach would not have substantially impaired the dredging

---

[8] We recognize that there may be situations where the creation of an artificial strip of land that severs a landowner's riparian rights will be sufficiently related to the navigational improvement such that it will result in a non-compensable taking.  See, e.g., Home for Aged Women v. Commonwealth, 89 N.E. 124, 129 (Mass. 1909) (recognizing that the creation of a seawall and park that cut off the landowner's riparian rights "was for the improvement of navigation," because the seawall and park were "natural, if not necessary incidents" related to maintaining the necessary water level).

18

operation.  Accordingly, we will affirm in part and reverse in part the ruling of the circuit court and remand the matter for a just compensation hearing to determine the value of Lynnhaven's riparian rights.

Affirmed in part,
reversed in part
and remanded.

CHIEF JUSTICE KINSER, with whom JUSTICE MILLETTE and JUSTICE MIMS join, concurring in part and dissenting in part.

For the reasons I state in 3232 Page Avenue Condominium Unit Owners Association v. City of Virginia Beach, 284 Va. 639, 735 S.E.2d 672 (this day decided) (Kinser, C.J., dissenting), I likewise respectfully dissent in part and would reverse the portion of the circuit court's judgment holding that it had the authority in this condemnation proceeding to adjudicate the ownership claim asserted by the City of Virginia Beach, the condemnor.  I would therefore vacate the portion of the circuit court's judgment holding that the City of Virginia Beach acquired the easements described in the condemnation petition by implied dedication and acceptance.  However, I concur in part II, section C. of the majority opinion concerning riparian rights, and agree that the circuit court erred in ruling that the loss of riparian rights of the owner, Lynnhaven Dunes Condominium Association, was not compensable.

JUSTICE MIMS, concurring in part and dissenting in part.

I join the opinion of Chief Justice Kinser concurring in part and dissenting in part. I also write separately to dissent from the majority's holding that the City proved an implied dedication of the Easements over the portion of Cape Henry Beach owned by Lynnhaven for the reasons I state in 3232 Page Avenue Condominium Unit Owners Association v. City of Virginia Beach, 284 Va. 639, 735 S.E.2d 672 (this day decided) (Mims, J., dissenting). I therefore would not apply the "right for the wrong reason" doctrine to affirm the circuit court's determination that the City acquired the Easements and would reverse the judgment of the circuit court.