Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Carrico and Koontz, S.JJ.

JOHN L. JENNINGS,
T/A JENNINGS BOATYARD, INC.
                                        OPINION BY
v.  Record No. 100068        CHIEF JUSTICE CYNTHIA D. KINSER
                                   April 21, 2011
BOARD OF SUPERVISORS OF
NORTHUMBERLAND COUNTY

FROM THE CIRCUIT COURT OF NORTHUMBERLAND COUNTY
Harry T. Taliaferro, III, Judge

In this appeal, a landowner with riparian rights who operates a commercial marina/boatyard challenges a locality's zoning authority to regulate the construction of additional mooring slips and accompanying piers that would lie beyond the mean low-water mark of a tidal, navigable body of water.  The landowner also challenges as void the locality's special exception permit ordinance, claiming that the ordinance lacks adequate standards to guide the governing body's decision to grant or deny a special exception permit.  Because we conclude that the circuit court did not err in denying the landowner's request for declaratory relief on either ground, we will affirm the circuit court's judgment.

MATERIAL FACTS AND PROCEEDINGS

The facts essential to this appeal are undisputed.  The appellant, John L. Jennings, owns approximately 12.4 acres of real property in Northumberland County (the County), part of which fronts Cockrell's Creek, a tidal, navigable tributary of

the Chesapeake Bay.  On this property, Jennings operates a business known as "Jennings Boatyard Marina" (the Marina), "a commercial marina/boatyard with 45 mooring slips and accompanying piers."  In March 2005, Jennings engaged a marine design construction company to develop plans and submit necessary applications for 46 additional mooring slips with accompanying piers (the Project).  The proposed slips would lie approximately 300 to 400 feet beyond the mean low-water mark of Cockrell's Creek.  They are designed as "deep water slips" for sailboats.

Subsequently, the marine design construction company submitted a special exception permit application on Jennings' behalf.  The County's Board of Supervisors (the Board) initially tabled the application, indicating that it wanted Jennings to obtain a riparian rights survey.  After obtaining the survey, Jennings reduced the additional slips requested from 46 to 31 to accommodate riparian lines.  After a public hearing on Jennings' application, the Board unanimously denied the special exception permit.  In a letter to Jennings, the County's zoning administrator explained that the "Board felt that since there are currently three (3) marinas in the area, including [Jennings'], that have mooring slips available for boaters, there would be no justification to allow an expansion at this time."

Jennings filed an action seeking declaratory relief against the Board. See Code §§ 8.01-184 and -186. Jennings alleged that only the Virginia Marine Resources Commission (VMRC) has authority to permit the placement of piers beyond the mean low-water mark and therefore the County lacked jurisdiction to regulate the Project through its special exception permit process. The Board answered, stating that it had authority to regulate beyond the mean low-water mark of the County's creeks and rivers.

Jennings moved for summary judgment, asserting that the County's zoning ordinances requiring a special exception permit for the expansion of the Marina are invalid and void ab initio. In ruling on that motion, the circuit court concluded that "title to land below [the] mean low[-]water [mark] is in the Commonwealth," and that "the VMRC has the exclusive right to issue permits" authorizing use of that land. However, the court rejected Jennings' argument that Code § 28.2-1203(A)(5), which allows the construction of private noncommercial piers beyond the mean low-water mark without VMRC's authorization, carves out from VMRC's otherwise exclusive jurisdiction a locality's "sole grant of authority . . . to zone in tidal[,] navigable waters." The court instead reasoned that the "general grant of authority to zone land . . . necessarily and fairly implie[s] that the County[,] in zoning upland for a marina/boatyard[,] has the

3

authority to regulate . . . piers and boat slips which are necessarily all part of the same use."  Thus, the circuit court concluded that Jennings' "proposed expansion of piers and slips may be constructed only pursuant to a permit from the VMRC, but [is also] subject to the Northumberland County Zoning Ordinance."  The circuit court, accordingly, denied Jennings' motion for summary judgment.

At a subsequent evidentiary hearing regarding the reasonableness of the Board's denial of Jennings' application for a special exemption permit, Jennings argued for the first time that the County's special exception permit ordinances, Northumberland Zoning Ordinance (NZO) §§ 148-95(A) and -138(A) and (B), are void for lack of any "objective criteria stated."  Jennings also reiterated that the Board lacked zoning authority over the Project because it would lie beyond the mean low-water mark.  The Board disputed, inter alia, Jennings' argument that the County's ordinances are "inadequate."[1]

In a letter opinion, the circuit court concluded that the Board's denial of Jennings' special exemption permit application

---

[1] The Board argued before the circuit court that Jennings did not challenge "the adequacy of [the] special exception ordinance" in his bill for declaratory relief and that the issue therefore was not "before the [c]ourt."  Because the circuit court nevertheless ruled on that issue and the Board has not assigned cross-error to the court's doing so, the issue is now before this Court.  See Rule 5:18(b).

4

"was not arbitrary, capricious and unreasonable."[2]  Relying on

Bollinger v. Board of Supervisors, 217 Va. 185, 187, 227 S.E.2d

682, 683 (1976), the court further concluded "that the

[challenged ordinance] is not invalid for failure to state

standards to be applied by the Board in the issuance of a

special exception permit."  Accordingly, the circuit court

entered an order denying the relief sought by Jennings.

Jennings appeals from the circuit court's judgment.

ANALYSIS

The primary issue now before us is whether the County's

zoning jurisdiction extends to the regulation of commercial

piers and marinas to be constructed on bottomlands that lie

beyond the mean low-water mark in the Commonwealth's tidal,

navigable waters.  Secondarily, we must decide whether the

County's ordinance regulating the issuance of special exception

permits is void for lack of adequate standards.  Both issues are

questions of law reviewed de novo by this Court.  See Schefer v.

City Council, 279 Va. 588, 592, 691 S.E.2d 778, 780 (2010);

---

[2] This Court did not award Jennings an appeal on his assignment of error asserting that the Board's denial of his special exception permit application was arbitrary and capricious.  Thus, that issue is not before us.  Because the Court awarded an appeal limited to Jennings' assignments of error challenging the County's zoning authority over the Project and the validity of the County's ordinance regarding special exception permits, the rule requiring exhaustion of administrative remedies does not apply.  See Dail v. York County, 259 Va. 577, 582, 528 S.E.2d 447, 449 (2000).

5

*Marble Techs., Inc. v. City of Hampton*, 279 Va. 409, 416 & n.9, 690 S.E.2d 84, 87 & n.9 (2010).

"Zoning is a legislative power vested in the Commonwealth and delegated by it, in turn, to various local governments for the enactment of local zoning ordinances." *Byrum v. Board of Supervisors*, 217 Va. 37, 39, 225 S.E.2d 369, 371 (1976); *accord National Mar. Union v. City of Norfolk*, 202 Va. 672, 680, 119 S.E.2d 307, 312 (1961). Thus, a locality's zoning powers are " 'fixed by statute and are limited to those conferred expressly or by necessary implication.' " *Board of Supervisors v. Countryside Inv. Co.*, 258 Va. 497, 503, 522 S.E.2d 610, 613 (1999) (quoting *Board of Supervisors v. Horne*, 216 Va. 113, 117, 215 S.E.2d 453, 455 (1975)). Localities have been delegated authority to include in their zoning ordinances "reasonable regulations and provisions" "[f]or the granting of special exceptions under suitable regulations and safeguards[.]" Code § 15.2-2286(A)(3). A governing body is also authorized to "reserve unto itself the right to issue such special exceptions," "notwithstanding any other provisions of this article." *Id.*

In Code § 15.2-2280, the General Assembly expressly granted localities the authority to zone "the territory under its jurisdiction." This authority extends to "regulat[ing], restrict[ing], permit[ting], prohibit[ing], and determin[ing],"

6

inter alia, "[t]he use of land, buildings, structures and other premises for agricultural, business, industrial, residential, flood plain and other specific uses" as well as "[t]he . . . construction . . . of structures[.]" Code § 15.2-2280(1) and (2). Thus, the County has express authority to regulate Jennings' Project in accordance with the requirements of the County's zoning ordinances if the bottomland in Cockrell's Creek that lies seaward of the mean low-water mark is "territory under [the County's] jurisdiction."

It is undisputed that such bottomland in Cockrell's Creek that lies seaward of the mean low-water mark is "the property of the Commonwealth," Code § 28.2-1200,[3] and that "the limits or bounds" of Jennings' real property lying on Cockrell's Creek and his "rights and privileges . . . extend to the mean low-water mark but no farther." Code § 28.2-1202(A); Scott v. Burwell's Bay Improvement Ass'n, 281 Va. ___, ___, ___ S.E.2d ___, ___ (2011) (this day decided). Also, neither party disputes VMRC's regulatory authority over the bottomland in Cockrell's Creek seaward of the mean low-water mark, see Scott, 281 Va. at ___, ___ S.E.2d at ___, also described as "state-owned bottomlands," Code § 28.2-101; see Code §§ 28.2-103, -1204, and -1205; or that

_____

[3] "All the beds of the bays, rivers, creeks and the shores of the sea within the jurisdiction of the Commonwealth, not conveyed by special grant or compact according to law, shall remain the property of the Commonwealth." Code § 28.2-1200.

7

the County's zoning authority over all "the territory under its jurisdiction" includes Jennings' real property, with its "rights and privileges . . . extend[ing] to the mean low-water mark." Code §§ 15.2-2280 and 28.2-1202(A).  The dispute in this case concerns whether both the County and the VMRC enjoy concurrent regulatory authority over the Project to be constructed on state-owned bottomlands.

As Jennings notes, the statutory provisions pertaining to a locality's zoning authority, specifically Article 7, titled "Zoning," in Chapter 22 of Title 15.2, provide no rule for determining what "territory" is "under [a locality's] jurisdiction" for purposes of zoning, with one exception.[4] However, Code § 15.2-3105 provides, in pertinent part, that

> [t]he boundary of every locality bordering on the
> Chesapeake Bay, including its tidal tributaries
> (the Elizabeth River, among others), or the
> Atlantic Ocean shall embrace all wharves, piers,
> docks and other structures, except bridges and
> tunnels that have been or may hereafter be
> erected along the waterfront of such locality,
> and extending into the Chesapeake Bay, including
> its tidal tributaries (the Elizabeth River, among
> others), or the Atlantic Ocean.

Jennings argues that this statute is not relevant to the question before us because it is found in Article 1, titled

---

[4] Code § 15.2-2281 provides that "the governing body of a county shall have jurisdiction over all the unincorporated territory in the county, and the governing body of a municipality shall have jurisdiction over the incorporated area of the municipality."

8

"Boundary Lines Established by Commissioners," in Chapter 31 of Title 15.2. According to Jennings, Code § 15.2-3105 pertains only to establishing boundaries as between localities. We do not agree. This statute states that the boundaries of localities "bordering on the Chesapeake Bay, including its tidal tributaries . . . shall embrace all wharves, piers, docks and other structures . . . erected along the waterfront of such locality, and extending into the Chesapeake Bay, including its tidal tributaries." Code § 15.2-3105. The territory under a locality's jurisdiction subject to its zoning ordinances cannot vary depending on the identity of the parties to the dispute. Further, as the circuit court noted, "while [Code § 15.2-3105] sets a rule for application in establishing county boundary lines where the opposite banks of the creek are in different counties, it does not follow either logic or the law that when both sides of the creek are in the same county, piers built out from the shore are not located within the boundaries of that county."

Jennings argues that even if Code § 15.2-3105 is applicable, VMRC's regulatory authority over the Commonwealth's bottomlands is exclusive. Jennings bases that assertion on Code § 28.2-1200, which recognizes the Commonwealth's ownership of bottomlands, and Code § 28.2-1204, which delegates authority to VMRC to "[i]ssue permits for all reasonable uses of state-owned

9

bottomlands not authorized under" Code § 28.2-1203(A).  That statute requires a permit to be obtained from VMRC to "build . . . upon" the Commonwealth's bottomlands.  Code § 28.2-1203(A).  We disagree with Jennings' analysis.

The regulatory authority granted the VMRC by the General Assembly does not preclude, but rather contemplates, that VMRC and a locality will have concurrent authority to regulate the construction of piers upon state-owned bottomlands where the pier is also "erected along the waterfront of such locality."  Code § 15.2-3105.  Pursuant to Code § 28.2-1203(A)(5), a permit from VMRC is not required for the "placement of private piers for noncommercial purposes by owners of the riparian lands in the waters opposite those lands" if such piers conform to certain specifications, but they remain "[s]ubject to any applicable local ordinances."  Thus, we hold that the circuit court did not err in concluding that the County's zoning authority "embrace[s]" the entirety of Jennings' proposed construction, even the portion that "extend[s] into the Chesapeake Bay['s] tidal tributaries," i.e., Cockrell's Creek.  Code § 15.2-3105.

The circuit court also did not err in holding that NZO § 148-138(A) is not "invalid for failure to state standards to be applied by the Board in the issuance of a special exception[]

10

permit."  NZO § 148-95(A)(21)[5] requires a special exception permit for commercial or private, noncommercial marinas and boatyards.  Pursuant to NZO § 148-138(A),[6] special exception permits "shall be subject to such conditions as the governing body deems necessary to carry out the intent of this chapter," i.e., Chapter 148, styled "Zoning."

In Bollinger, this Court addressed whether a section of the Roanoke County Code was unconstitutional because it failed to provide adequate standards to guide the governing body's decision whether to grant conditional use permits.  217 Va. at 186, 227 S.E.2d at 683.  The challenged section of the Roanoke County Code required a conditional use permit for certain uses of real property, such as "borrow pits and sanitary fill method garbage and refuse sites."  Id. (internal quotation marks omitted).  That section of the county code also stated that "[t]hese permits shall be subject to such conditions as the governing body deems necessary to carry out the intent of this chapter."  Id. (internal quotation marks omitted).  Virtually the same language appears in NZO § 148-138(A).  Because the governing body there, like the County in this case, reserved unto itself the power to issue conditional use permits, we held

_____

[5] This ordinance has been recodified as NZO § 148-107(A)(21).

[6] This ordinance has been recodified as NZO § 148-150(A).

11

that it was performing a legislative function when it granted or denied such permits.  Id.  We further held that "zoning ordinances enacted pursuant to [former Code § 15.1-491, now Code § 15.2-2286(A)(3),] need not include standards concerning issuance of special use permits where local governing bodies are to exercise their legislative judgment or discretion."  Id. at 187, 227 S.E.2d at 683.  The same conclusion applies to the County ordinance at issue in this appeal.  But see, e.g., Ames v. Town of Painter, 239 Va. 343, 349, 389 S.E.2d 702, 705 (1990) (noting that "delegations of legislative power" from a locality's governing body to a board of zoning appeals "are valid only if they establish specific policies and fix definite standards to guide the official, agency, or board in the exercise of the power").

Jennings, nevertheless, contends that this Court's decision in Cole v. City Council, 218 Va. 827, 241 S.E.2d 765 (1978), compels a different conclusion.  There, this Court addressed a City of Waynesboro ordinance reserving to the City Council "'the right to issue a special exception . . . permit whenever public necessity and convenience, general welfare or good zoning practice justifies such special exception.'"  Id. at 832, 241 S.E.2d at 769 (emphasis added).  We concluded that the ordinance at issue was "fatally defective and invalid" because it reserved to the

> [City] Council the authority to issue a special
> exception . . . permit for the construction of a
> building in any zoning district in Waynesboro
> whenever, in its sole discretion, such action is
> justified by public necessity and convenience and
> the general welfare.  The ordinance gives [City]
> Council an opportunity to grant a special
> exception without a consideration of good zoning
> practices or a consideration by it of the
> purposes of the zoning ordinances of the city or
> the objectives which zoning ordinances seek to
> accomplish.

Id. at 833, 241 S.E.2d at 769.

As nothing in NZO § 148-138(A) authorizes the Board to determine whether a special exception permit should be granted outside "the framework of the zoning statutes and principles that apply to zoning" or provides "an open invitation for a special exception to be granted without any consideration being given to certain basic principles of law applicable in the zoning field," that ordinance is not void for lack of adequate standards.  Cole, 218 Va. at 833-34, 241 S.E.2d at 769-70; see Bollinger, 217 Va. at 186-87, 227 S.E.2d at 683.

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court.

Affirmed.

13