# CIRCUIT COURT OF FREDERICK COUNTY

Shenandoah Mobile Co. et al.

v.

Frederick County
Board of Supervisors

June 27, 2011

Case No. (Civil) CL09-232

BY JUDGE DENNIS L. HUPP

The issues in this case have been presented to me on competing motions for summary judgment, and both sides agree that the case can be decided on summary judgment. In order to avoid further delay, I will be as brief as possible, but the relative brevity of this letter opinion should not be taken as any reflection of the amount of time and consideration I have given this matter. I will follow the tack taken by counsel and refer to Shenandoah Mobile Company as "Shentel."

David Gregg and Kathleen Gregg own a tract of real estate containing approximately 33 acres at 1203 Redbud Road, Winchester, Virginia, which is located in Stonewall Magisterial District in the Northeast portion of Frederick County. The Gregg property is zoned as a Rural Area (RA). Telecommunications towers are permitted in an RA upon the issuance of a conditional use permit. The Gregg property is not located within an Urban Development Area (UDA) or a Sewer and Water Service Area (SWSA) under the Frederick Comprehensive Plan. Under that Plan, it is contemplated that land within these areas would be subject to more intensive forms of residential development and also commercial, industrial, and institutional development. The Gregg property is, however, located in the Northeast Frederick Land Use Plan (NELUP), and that Plan seeks to preserve and protect historic resources, environmentally-sensitive areas,

and open space. The Gregg property sits within fairly close proximity to several historically significant properties, most particularly, the site of the Third Battle of Winchester. The proposed tower would be visible to some extent from the interpretive area of that battle site. It should be noted that the Gregg property lies east of the battlefield and that there has been substantial residential and commercial development west of the battlefield along major thoroughfares. This development lies approximately one mile from the Gregg property. Finally, the Gregg property sits on a Virginia Byway as determined by the Virginia Department of Transportation. In December 2007, Shentel entered into a lease agreement with the Greggs for the maintenance of a tower for wireless telecommunications. Under the Frederick County Zoning Ordinance, this project requires a conditional use permit, and the application for same was filed by Shentel in July 2008. Shentel's application complied with the procedural requirements of the zoning ordinance in that Shentel filed the necessary documentation. At the end of a somewhat lengthy process, the Board ultimately denied the application on a six-to-one vote. This suit was then filed by Shentel for declaratory judgment and for injunctive relief overturning the Board's decision and directing the Board to issue the requested conditional use permit.

The regulation of the use of land is part of the police power vested in the General Assembly which may delegate the same to the localities within the Commonwealth. *Helmick v. Town of Warrenton*, 254 Va. 225 at 229 (1997), and *Jennings v. Board of Supervisors of Northumberland County*, 281 Va. 511 at 516 (2011). Land use is regulated by zoning ordinances, and those ordinances may provide for the issuance of conditional use permits. The local governing body may reserve this power unto itself or delegate it to another local body such as a Board of Zoning Appeals. Here, the Board reserved that power unto itself. The issuance of a conditional use permit is a legislative function, especially where the Board of Supervisors has reserved that power unto itself. *Byrum v. Board of Supervisors of Orange County*, 217 Va. 37 (1976), and *Bollinger v. Roanoke County*, 217 Va. 185 (1976). Because the regulation of land use affects property rights, the local governing body is not permitted to act arbitrarily or capriciously in the issuance of conditional use permits, and its actions in this regard are subject to judicial review. The constitutional principle of separation of powers requires that judicial review of this legislative function be undertaken "with particular circumspection." *Freezeland Orchard Co. v. Warren County Board of Supervisors*, 61 Va. Cir. 548 at 563 (Warren County, 2001). The exercise of this legislative prerogative is presumed to be valid and must not be overturned by the judicial branch "absent clear proof that the action is unreasonable, arbitrary, and bears no reasonable relationship to the public health, safety, morals, or general welfare." *Id.* at 564, citing *Virginia Beach v. Harrell*, 236 Va. 99 at 101 (1988). The legislative action is reasonable and

therefore not arbitrary or capricious if the issue at hand is "fairly debatable." See *Board of Supervisors of Loudoun County v. Lerner*, 221 Va. 30 at 34 (1980). The matter is "fairly debatable" when the evidence, measured both quantitatively and qualitatively, "will lead objective and reasonable persons to reach different conclusions." *Board of Supervisors of Fairfax County v. Williams*, 216 Va. 49 at 58 (1975). In this last regard, it is worthy of note that the Frederick County Planning Commission ultimately recommended approval of the application, with conditions, by a seven-to-two vote, after an initial split vote, five-to-five, whereas the Frederick County Board of Supervisors rejected the application by a six-to-one vote. While a local governing body need not include in its zoning ordinance standards for the issuance of conditional use permits (*Bollinger v. Roanoke County* at 187), where the local governing body has reserved unto itself the power to grant such permits, its action must be consistent with good zoning practices. *Cole v. City Council of Waynesboro*, 218 Va. 827 (1978). See also *Jennings v. Board of Supervisors of Northumberland County*. In our case, the Frederick County Zoning Ordinance specifically listed certain standards to be considered in the granting of conditional use permits as follows:

> A. The conditional use shall not tend to change the character and established pattern of development of the area of the proposed use.
>
> B. The conditional use shall be in harmony with and shall not adversely affect the use and enjoyment of surrounding properties.
>
> C. The conditional use shall be in accord with the policies expressed in the Comprehensive Plan of the County and with the intent of this chapter.
>
> D. The conditional use shall not adversely affect the natural character and environment of the County.
>
> E. The conditional use permit shall be approved only if adequate facilities, roads, safe access, and drainage are provided.
>
> F. The conditional use shall conform with all applicable regulations of the district in which it is located.

Frederick County Code § 165-15.

Shentel contends that the Board did not give adequate consideration to these standards in denying the application. Specifically, Shentel points to the sum and substance of Supervisor DeHaven's motion made at the meeting on February 25, 2009. I find, however, that, as stated in the Board's Proposed Findings of Facts (at pp. 38 and 39), Mr. DeHaven touched on four of the six standards. In addition, in approving minutes from that meeting, the Board "in effect" adopted the formal resolution embodied in

these minutes wherein reasons for the Board's action were stated with more specificity and elaboration. While I understand Shentel's frustration with this procedure, I also understand that, in the give and take of Supervisors' meetings, it is impractical, if not impossible, to have such resolutions available at the time motions are made and acted upon. I suppose that, in situations where a formal resolution would be advisable, the Board could table the oral motion and then take it up after the resolution is prepared, but this would delay the Board's decision and thereby make this process even more protracted than it is. I know of no requirement that each individual Board Member express his reasons for voting either for or against the motion. *Freezeland Orchard Co. v. Warren County Board of Supervisors*, at 567. In reviewing the evidence submitted to the Board and evaluating it both quantitatively and qualitatively, "there must be substantial evidence in the record that has a logical tendency, however slight, to generate potential difference and opinions among reasonable persons on the issues which are material to the decision." I find that there is such evidence here.

Accordingly, I find that the Board adequately considered its self-imposed standards for the issuance of conditional use permits in this case and therefore did not act arbitrarily or capriciously.

I note here that Shentel presented to both the Planning Commission and the Board information concerning the need for the proposed tower and reasons why it could not "co-locate" the telecommunications facilities on another existing structure. Shentel argues that the Board is not permitted to "second guess" Shentel's determination of need, but I need not address this issue except to say that "need," or, more accurately, the lack thereof, was not a reason given by the Board for its action with respect to the application. With regard to co-location of telecommunication facilities, it certainly appears to me that Shentel, in keeping with its own internal policies as well as the requirements of the Frederick County Zoning Ordinance, seriously explored the possibility of co-locating the telecommunications equipment on other existing structures. The Board contends, however, that these efforts were not thorough enough. Since this was only one of several reasons cited by the Board as a basis for its action in this case, I will not address it further except to say that, here again, reasonable minds may differ as to the sufficiency of those efforts. Shentel also notes that the Frederick County Zoning Administrator opined, in deposition testimony, that the location of the Gregg property outside the UDA and the SWSA was not a relevant consideration to the awarding or denial of a conditional use permit. The Board is not bound by his view. Indeed, the Board takes a different view and argues that creation of the UDA and SWSA designates portions of the County for more intense development and that, conversely, portions of the County located outside the UDA or SWSA are intended to remain largely rural. Given the standards that must be consulted by the Board under its own ordinance, this is a relevant consideration; however,

it cannot be a conclusive consideration or the sole consideration, since this would contradict the zoning ordinance provision allowing the erection of a telecommunications tower in a Rural Area. Moreover, from a practical standpoint, this would also restrict wireless telecommunications coverage to urban areas. Here, this was one of several circumstances referenced by the Board as a basis for its decision.

I now turn to Shentel's claim that the Board has violated the Telecommunications Act of 1996, specifically asserting that the denial was not in writing and was not supported by substantial evidence contained in a written record. In the first instance, the minutes of the February 25, 2009, Board meeting suffices as a written denial, in my view. In the latter regard, the numerous exhibits filed in this case constitute "substantial evidence," and I will reiterate my view that it is sufficient to support opposing views taken by objective and reasonable individuals. See *USCOC of Virginia RSA III, Inc. v. Montgomery County Board of Supervisors*, 343 F.3d 262 at 271 (4th Cir. 2003). I find that the Board has complied with the Telecommunications Act.

Finally, I will address Shentel's contention that the Board has discriminated against it, citing, in support of this argument, the Board's action with respect to an AT&T tower and the rezoning of the Graystone property. The Board raises a good point with respect to Shentel's allegations of discrimination. This was not addressed in Shentel's complaint simply because the Board's actions with respect to the AT&T application and the Graystone rezoning occurred after the filing of the complaint. This would have been properly the subject of an amended complaint. In any event, however, since I do not recall this procedural issue being raised at our hearing, I will address the merits of Shentel's claim in this regard. With respect to the AT&T tower, there are significant differences between its location and that of the Gregg property. The AT&T tower is located on property lying on US Route 11 in a more urban setting than that of the Gregg property. The surrounding area has a number of homes on comparatively small lots and sits in close proximity to a FEMA facility and within one-half mile of a shopping center. The AT&T property is zoned Residential Performance (RP), and it was removed from the developmentally sensitive area designation prior to the application for the conditional use permit. It is two miles from the Gregg property and, the tower is 120 feet in height as opposed to Shentel's proposed tower of 195 feet. The AT&T property was located within the SWSA common area designated for more intensive development.

I have to say that the Board's action with respect to the Graystone property gives me greater pause. In that case, the Board granted a rezoning of the property that will lead to a major change in the present condition and character of same. This property encompasses a relatively unscathed portion of the site the Second Battle of Winchester and sits across a public road from

the interpretive center for the site of the Third Battle of Winchester. The Board has based its reason for the denial of the Shentel permit in significant part on the effect the tower would have on the "view shed" of that site. Given the proximity of the Graystone tract to the interpretive center for the Third Battle of Winchester, the rezoning of that tract will necessarily have an impact on the interpretive center's character and environment. Having said this, however, I do note that there are differences between the Graystone property and the Gregg property. First, the Frederick County Comprehensive Plan designates the Graystone property as part of the Plan Use Development (PUD), envisioning a mix of residential, commercial, and office components. The Graystone property is located in the SWSA, an area designated for more intensive development than the area where the Gregg property is located. The Graystone property is also located in the UDA. The Graystone property is located adjacent to the CSX rail line and is in close proximity to Interstate 81 and Routes 11 and 37 and to other existing commercial and industrial facilities. Hence, while I may personally dislike the decision, the Board had objective reasons for treating the Graystone property differently from the Gregg property.

I must say that Mr. Ullrich has advanced compelling arguments in support of Shentel's application, and, if my role in this case were that of a supervisor, his arguments would carry the day; however, in my judicial function, it is not my role to substitute my judgment for that of the elected representatives of the people of Frederick County, and I note that, in this instance, that judgment was expressed with near unanimity.

Let me also say that my hat is off to The Honorable John E. Wetsel, Jr., who, in typical fashion, thoroughly and scholarly discussed the law relative to the subject matter at hand in his opinion issued in *Freezeland Orchard Co. v. Warren County*, 61 Va. Cir. 548 at 563 (Warren County, 2001). Both counsel in our case have cited and recommended this decision to the Court, and it has indeed been most helpful in my analysis.

In conclusion, for the reasons stated herein, I affirm the Board's decision in denying Shentel's application for a conditional use permit. I grant the Board's motion for summary judgment, and I deny the plaintiff's motion for summary judgment.